MARY A. ULMER and others *vs.* JAMES R. FARNSWORTH.

Knox. Opinion August 3, 1888.

*Assumpsit. Contract. Quarry. Custom.*

Compensation for pumping water from a quarry, which run into it from an adjoining quarry where it accumulated, can not be recovered in an action of assumpsit against the owner of the other quarry, when there is no evidence of a promise to pay for such service.

Custom, to have the force of law, must, among other things, be universal and its origin so far back that the memory of man runneth not to the contrary.

ON report.

The opinion states the case and material facts.

*O. G. Hall*, for plaintiffs.

There was, we submit, enough evidence of the custom. The presiding judge in fact said it was not necessary to further multiply the witnesses. No certain number of witnesses is necessary to prove a custom. *Adams* v. *Pittsburgh Ins. Co.* 40 Am. Rep. 662.

The custom was general, as clearly proven. Defendant is presumed to have had notice of it, and knowledge of its existence. *Stevens* v. *Reeves*, 9 Pick. 197.

It was so uniform and had been so long continued that the defendant's knowledge is to be inferred. *Winslow et al.* v: *Dillaway*, 4 Met. 223.

When one stands by in silence and sees valuable services rendered for his benefit, such silence, accompanied with knowledge on his part that the party rendering the service expects payment therefor, may fairly be treated as evidence of an acceptance of the service, and as showing an agreement to pay for such services. *Day* v. *Caton*, 119 Mass. 515.

The maxim *Qui tacet consentire videtur*, applies when the party is fairly called upon to deny or admit his liability, and silence has often been interpreted as admission of liability, when one is fairly called upon to speak in the face of such facts. *Id.* 516; *Connor* v. *Hackley*, 2 Met. 613; *Preston* v. *Am. Linen Co.* 119 Mass. 400.

*Robinson and Rowell*, for the defendants, cited: *Gannon* v. *Hargadon*, 10 Allen, 106; *Sowers* v. *Lowe*, 9 Atl. Rep. 44; *Peck* v. *Herrington*, 109 Ill. 611; *Anderson* v. *Henderson*, 16 Nor. East. Rep. 232; Wash. Ease. & Serv. 353; *Bangor* v. *Lansil*, 51 Maine, 521; *Greeley* v. *M. C. R. R. Co.* 53 Maine, 200; *Chase* v. *Silverstone*, 62 Maine, 175; *Parker* v. *B. & M. R. R. Co.* 3 Cush. 107; Gould, Waters, § 294; 2 Addison, Torts, § 1049; Shear. & Red. Neg. § 511; *Luther* v. *Winnimissett Co.* 9 Cush. 171; *Flagg* v. *Worcester*, 13 Gray, 601; *Dickinson* v. *Worcester*, 7 Allen, 19; *Parks* v. *Newburyport*, 10 Gray, 28; *Leach* v. *Perkins*, 17 Maine, 462; *Latimer* v. *Alexander*, 14 Ga. 259; *Randall* v. *Smith*, 63 Maine, 105; *Homer* v. *Dorr*, 10 Mass. 26; *Strong* v. *Bliss*, 6 Met. 393; *Home* v. *Mut. Ins. Co.* 1 Sandf. (N. Y.) 137; *Higgins* v. *Moore*, 34 N. Y. 417; *Marshall* v. *Perry*, 67 Maine, 78; *Sipperly* v. *Stewart*, 50 Barb. 62; *Minn. R. R.* v. *Morgan*, 52 Barb. 217; *Boardman* v. *Gaillard*, 60 N. Y. 614.

DANFORTH, J. The plaintiffs are the owners of a lime quarry in which they have a pump used for the purpose of draining their quarry from such water as may accumulate therein, whether coming from sources within its own limits or outside. The defendant owns another quarry adjacent to, but not adjoining the plaintiffs', there being one quarry between them. It is alleged that water accumulates in the defendant's quarry, and running through the one intervening, comes upon that of the plaintiffs and is pumped up by them. It is to recover compensation for this service that this action is brought, the plaintiffs alleging that the defendant receives benefit from it, as it prevents the injurious accumulation of water in his own quarry.

The action is assumpsit and must therefore be maintained, if at all, upon proof of a promise, express or implied. The case shows no sufficient proof of an express promise.

Nor will the facts proved, independent of the alleged custom or usage relied upon by the plaintiffs, raise an implied promise. The pump by which the service was performed was situated in the plaintiffs' quarry, put there primarily for the purpose of

draining their own premises. The running of the water from the defendant's quarry to the plaintiffs', was the result of the plaintiffs' own act in digging theirs deeper than the other. The benefit accruing to the defendant, if any, was merely incidental, with no legal right to interfere with the operation of the pump, and hence under no obligation to give notice of a denial of liability. These circumstances could not raise an implied promise on the part of the defendant, certainly not if he was guilty of no wrong in permitting the water to run as it did, and if he was guilty the remedy would be in another form of action. And when we add to this the unqualified and uncontradicted denial of the defendant that any contract was made, we must come to the conclusion that the testimony not only fails to sustain a promise, but that in fact none, either express or implied, ever existed.

But the plaintiffs rely upon an alleged custom or usage in that neighborhood by which under like circumstances the parties receiving this incidental benefit, have recognized a liability to pay a certain specified sum, one cent for each cask of lime burned from the rock taken out of the quarry thus drained. It is claimed that this usage of itself raises an implied promise on the part of the defendant.

It requires the citation of no authorities to show that to give a custom the force of law, among other things, it must be universal and its origin in point of time so far back "that the memory of man runneth not to the contrary." This custom is at best but a local one and is confined to "a particular business or employment," and so recent in its origin that its beginning is within the memory of some of the witnesses. But as a local and limited usage the evidence fails to show its uniformity or certainty. On the other hand, it appears that the price paid was not the same in all cases, and in many instances both the price paid and the liability was the result of a contract. Nor does it clearly appear that this was not true in all cases; while in the constantly varying circumstances attending each case, the application must be difficult and uncertain.

But assuming the evidence to be plenary and to establish all

that is claimed for it, still, as a local and limited usage, and it can be no other, while it may be received to modify a contract, to explain the intention of the parties to it in case of an ambiguity, or the meaning of certain words used, or control to some extent the modes of dealing between parties in like business, as well as the manner of performing their contracts, many illustrations of which may be found in the usages of banks and merchants, but " it cannot be received to establish a liability, or to prove the origin of the relation by which the parties became responsible to each other." Such a usage may have an application to a contract previously existing, but cannot of itself create one. Nor can it be received to change an express contract, or in violation of an established principle of law. *Leach* v. *Perkins,* 17 Maine, 462; *Randall* v. *Smith,* 63 *id.* 105; *Bodfish* v. *Fox,* 23 *id.* 90; *Adams* v. *Morse,* 51 *id.* 497; *Dickinson* v. *Gay,* 7 Allen, 29; *Waters* v. *Lilley,* 4 Pick. 145. If this alleged usage is allowed to prevail in this case, it imposes a contract liability upon this defendant in direct opposition to the established principle of law requiring assent to a binding contract. This action must therefore fail whatever remedy may be open to the plaintiffs in a process of a different form.

*Judgment for defendant.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and FOSTER, JJ., concurred.