## McSORLEY *v.* FAULKNER *et al.*

(*Common Pleas of New York City and County, General Term.* April 4, 1892.)

**1. ASSUMPSIT—WHEN LIES—IMPLIED PROMISE.**
   Plaintiff sold his business to defendants, and left a telephone, of which he was the licensee, on the premises, and the latter used such telephone continuously thereafter in their business. *Held*, that defendants were chargeable with notice that the use of the instrument involved the obligation of the licensee, and such use by them implied a promise to pay plaintiff therefor.

**2. SAME—EVIDENCE.**
   In an action for the use of a telephone, testimony by plaintiff as to the value of the use, based on the amount paid by him and his knowledge of what others paid for similar use, is sufficient.

Appeal from eleventh district court.

Action by Alexander McSorley against James A. Faulkner and another upon an implied promise to pay for the use of a telephone. Judgment for plaintiff. Defendants appeal. Affirmed. For former report, see 14 N. Y. Supp. 789.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Johnston & Johnston,* for appellants. *Mooney & Shipman,* for respondent.

DALY, C. J. Upon the former appeal in this action it was held by the general term of this court that the plaintiff was not entitled to recover upon the facts then shown, viz.: That the plaintiff sold to defendants the business conducted by him at 1151 Ninth avenue; that in the premises at the time of the sale was a telephone, which had been previously placed there by the Metropolitan Telephone & Telegraph Company under a contract with the plaintiff, by which he was to pay monthly for its use for a stated period, not then expired; that after defendants went into possession the telephone remained in the premises and was used for the whole period, (but by whom did not appear,) and that plaintiff paid the company for such use $50, and then brought this action to recover that sum from defendants, as upon their implied request to pay for the use of the instrument. It was held by the general term that as the plaintiff made the original contract with the company, and defendants were not privy to it, and were not under any liability to pay the company, in the absence of proof that the telephone was left in the premises at defendants' request, or that its use was necessary to, or was connected with, the business, or that there was any agreement between the parties in relation thereto, or that the defendants ever used the instrument, the plaintiff was not entitled to recover from them what he had to pay the company; and the judgment in plaintiff's favor was reversed, and a new trial was ordered. *McSorley* v. *Faulkner,* (Com. Pl. N. Y.) 14 N. Y. Supp. 789. Upon the second trial, it was shown that the defendants, from the time they took possession of the premises, used the telephone constantly for the whole period covered by the plaintiff's contract with the company. At the close of the plaintiff's case, the defendants moved to dismiss the complaint, and the plaintiff moved to conform the pleadings to the proof of a cause of action upon an implied contract for using the telephone as belonging to the plaintiff. The plaintiff's motion was granted, and, after the proofs on both sides were in, the justice rendered judgment in plaintiff's favor for $50 and costs. The ruling of the previous general term has settled the law of the case, that the plaintiff has not shown himself entitled to recover upon the ground originally claimed in the complaint, viz., an implied request to him by defendants to pay the company for their use of the instrument; for there was wanting the basis of such implication, *i. e.,* a primary liability of the defendants to the company, and a compulsion of law upon the plaintiff, growing out of the acts of the defendants, (and not out of his own independent contract,) to make the payment sued for. The company may have had the option to hold the defendants for the use of the telephone, and the services rendered in operating it for their benefit, upon an implied promise to pay for such services, but this would have been an option to terminate the contract with the plaintiff, and would have discharged him, for the two contracts could not subsist together; and any payment by plaintiff thereafter in behalf of defendants would have been voluntary, and not recoverable against them. *First Nat. Bank of Ballston Spa* v. *Board of Sup'rs,* 106 N. Y. 488-494, 13 N. E. Rep. 439. But the contract was not terminated by the company, and the plaintiff remained the licensee of the instrument and entitled to its use, and to the services of the company in transmitting communications through their office during the whole period of his contract. The use by defendants of the instrument and

of these services was a use of the plaintiff's property, and it would seem just and reasonable to imply a promise on their part to pay the plaintiff for such use. They are chargeable with notice when they found the instrument upon the premises which plaintiff transferred to them, and when they began and continued to use it, that such use was not gratuitous, but involved an obligation of the licensee of the company to pay, and that they were enjoying the rights for which he was paying or was liable to pay. A duty to make him compensation arose from the circumstances, and a contract to do so will be implied. "In this sense, contract is co-ordinate and commensurate with duty; and it is a familiar principle of the law, which has a wide though far from a universal application, that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. 'Implied contracts,' says Blackstone, (2 Bl. Comm. p. 443,) 'are such as reason and practice dictate, and which, therefore, the law presumes that every man undertakes to perform.' These contracts form the warp and woof of actual life." 1 Pars. Cont. 4. The absence of the essentials of ordinary contract relation will not affect the liability. "There is a class of cases where the law prescribes the rights and liabilities of parties who have not in reality entered into any contract at all with one another, but between whom circumstances have arisen which make it just that one should have a right, and the other should be subject to a liability, similar to the rights and liabilities in certain cases of express contracts. * * * Implied or constructive contracts of this nature are similar to the constructive trusts of courts of equity, and in fact are not contracts at all. Add. Cont. 22. And a somewhat similar distinction is recognized in the civil law, where it is said: 'In contracts, it is the consent of the contracting parties which produces the obligation; in *quasi* contracts, there is not any consent. The law alone or natural equity produces the obligation by rendering obligatory the fact from which it results. Therefore, these facts are called *quasi* contracts, because, without being contracts, they produce obligations in the same manner as actual contracts.' 1 Poth. Obl. 113, * * * So obligations are created in consequence of frauds or negligence, and in either case the law compels reparation and permits the tort to be waived, but there is no contract." *People* v. *Speir*, 77 N. Y. 144–150. The defendants, by using the telephone constantly in their business, must have intended one of two things: to pay the person entitled to the use of the instrument as licensee the fair value of such use, which they engrossed in their business, or to defraud him. In neither case can an implied contract to pay be justly or lawfully denied.

It is not essential to the rights of the plaintiff to recover that he should have assented to the use of the instrument by defendants, or even have known of it. *Rider* v. *Rubber Co.*, 28 N. Y. 379. In that case the plaintiff left with the defendants certain property, in the expectation that they would purchase it. The managing agent of the company found it on the premises, and, having use for it in the business of the company, took the responsibility of using it. It was held that, notwithstanding the fact that plaintiff did not give nor intend to give the use of the same to the defendant, the law implied an agreement by defendant to pay plaintiff the value of the use while the same was used in its business. A number of cases are cited by appellants, but none conflict with the view here taken of defendants' liability. There is no analogy between this claim and the claim for use and occupation of real property, where the conventional relation of landlord and tenant must be shown, (*Collyer* v. *Collyer*, 113 N. Y. 442, 21 N. E. Rep. 114; *Crosby* v. *Horne & Danz Co.*, 45 Minn. 249, 47 N. W. Rep. 717; *Reed* v. *Lammel*, (Minn.) 42 N. W. Rep. 202; *In re Curtis' Will*, (Sup.) 16 N. Y. Supp. 180; *McCrory* v. *Anderson*, (Ind. Sup.) 2 N. E. Rep. 213; *Tanner* v. *Rummel*, 24 Wkly. Dig. 149;) or for the use of a patented device, which is an infringement upon a right and not the taking of property, (*Forehand* v.

*U. S.*, 23 Ct. Cl. 477;) or for work voluntarily performed, (*Ulmer* v. *Farnsworth*, 80 Me. 500, 15 Atl. Rep. 65;) or payments voluntarily made, (*City of Albany* v. *McNamara*, 117 N. Y. 168, 22 N. E. Rep. 931;) or a claim based upon estoppel, (*Bowers* v. *Smith*, (Sup.) 8 N. Y. Supp. 226;) or an action at law by a subcontractor against the owner, for the value of materials furnished to the contractor, and used by the owner, which was, in effect, the nature of the claim made in *Hogan* v. *City of Brooklyn*, 52 N. Y. 282; or an action by a lessor against a lessee for an extra use of Croton water measured by a water-meter, where the covenant on the part of the lessee was to pay only the regular annual charge for Croton water, (*Moffat* v. *Henderson*, 50 N. Y. Super. Ct. 211.) It is, however, contended that the claim here made is analogous to that discountenanced in *Loyd* v. *Fox*, 1 E. D. Smith, 101, where plaintiff, having been tenant of certain premises in the city of New York, under a hiring for a year, paid the charge for the use of the Croton water for that year, and having given up possession, after four months' occupancy, and the premises having been relet by the landlord for the residue of the year, claimed payment of the new tenant for the use of the Croton water for the unexpired period of eight months. But the plaintiff had no property in the water, nor in the pipes upon the premises, and when he abandoned possession necessarily relinquished all his right; and defendant could not be held upon any implied promise to pay plaintiff for what plaintiff could not use or enjoy himself. But in this case, plaintiff had the right to remove the telephone instrument and connect it wheresoever he removed to, and defendants, in enjoying the benefit of it while it remained upon the premises, were using the exclusive and undoubted property of the plaintiff.

Objection is made that there was no sufficient proof of the value of the use of the telephone during the period—four months—sued for. The plaintiff testified that it was worth $12.50 per month. It appears that his knowledge of the value was founded upon what he paid himself and knew that others paid. It is not easy to see what other or better evidence of value could be produced. Appellants do not suggest any. Persons hiring and using telephones in their business are competent to testify to the value of such use.

The judgment should be affirmed, with costs. All concur.