## James Currie, Sr., et al., v. Syndicate Des Cultivators Des Oignons a'Fleur.

1. EVIDENCE—*Fact or Extent of Agency Can Not be Proved by Declarations of Alleged Agent.*—Neither the fact that one was the agent of another, nor the extent of such agency, if any, can be proven by the declarations of him who claims to be such agent.

166    APPELLATE COURTS OF ILLINOIS.

VOL. 104.] Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

2. SAME—*Of Commercial Transactions—Usage.*—Usage in connection with commercial transactions, if relied upon, must be shown to be certain, uniform, reasonable, and so general as to furnish a presumption of knowledge thereof by both parties.

### OPINION UPON REHEARING.

1. WORDS AND PHRASES—*Usages and Customs.*—While the words usages and customs are generally used synonymously in legal writings and in popular language, they have not entirely the same significance. The expression "customs," as applied to the conduct of men, does include usages, but usage does not necessarily include custom. A custom is such usage as by common consent and uniform practice has become the law of the place where it exists, or of the subject-matter to which it relates. Usage is a method of dealing adopted in a particular place or by those engaged in a particular vocation or trade, which acquires legal force because people make contracts with reference to it.

2. SAME—*Length of Time Necessary to Form Custom and Usage.*—Custom, to become a law, must be so ancient that the memory of man runneth not to the contrary. Usage need only be old enough to be well established in the trade or place.

3. USAGE—*Fundamental Principle upon Which Law is Based.*—The fundamental principle upon which the law as to usage is based is that it entered into and was a part of the contract of the parties.

4. SAME—*Can Not Create a Contract.*—Contracts arise out of the intention of parties to do or not to do certain things. It thus follows that one can not be held to have contracted to do or not to do something of which he neither had, nor is presumed to have had, knowledge or notice. Usage, therefore, can not create a contract—bring one into being, where, without it, none exists.

5. SAME—*When Admissible in Evidence.*—Evidence of usage is admissible to show the true meaning of the parties in making a contract. If parties make a special contract in relation to a matter which would otherwise be determined by usage, it follows that they intended to exclude the operation of the usage since otherwise they would not have made a special contract; so if it appear that an agreement has been made upon a particular point and there is a controversy as to the terms of that agreement, such terms can not be shown by proof of the usage respecting them; in other words, the special agreement excludes the usage.

6. SAME—*Habit Does Not Constitute.*—Habit does not constitute usage. The habit or practice of particular persons or of persons in a particular trade does not in itself constitute a usage. It is only when a practice has come to have the essential characteristics of a usage that it can be considered as such.

7. SAME—*Strictly Construed.*—Usages are strictly construed; are allowed to operate only upon cases clearly covered by them. As evidence of usage is admissible only because it forms a part of the contract of the parties, it will not be allowed to extend further than to make clear what the contract of the parties was.

Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

8.  SAME—*Question of Law and Fact.*—What is sufficient usage to bind the parties is a question of law for the court; whether the facts claimed to constitute usage have been proved is a question of fact for the jury.

Attachment.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding.   Heard in the Branch Appellate Court at the October term, 1901.   Affirmed.   Opinion filed October 24, 1902.   Rehearing denied and additional opinion filed November 14, 1902.

This was an action of attachment against appellee, a corporation of France, to recover the sum of $770.48 damages for alleged breach of contract.   The declaration charged that the plaintiffs purchased from the defendant certain bulbs and hyacinths at a price aggregating $787.43, and that the defendant agreed to deliver said bulbs and hyacinths to the plaintiffs at Milwaukee, Wisconsin, as soon after the date of said contract as was consistent with the safe delivery of said goods; that the defendant failed to deliver any portion of said merchandise, and that the plaintiffs were obliged to buy other goods in the market to take the place of the merchandise agreed to be delivered by the defendant, and by reason thereof plaintiffs sustained damages; also that the plaintiffs had made sales of bulbs and hyacinths, relying upon the aforesaid purchase; that defendant failed to deliver said goods to the plaintiffs, and plaintiffs were unable to purchase other goods in the market to take the place of those purchased from the defendant and hence lost the profits on said sales.   A plea of the general issue was filed by the defendant.   The jury by direction of the court returned a verdict for the defendant.

D. K. TONE and MORSE IVES, attorneys for appellants; L. G. WHEELER, of counsel.

PIERSON & PEASE, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The claim of appellant that he made the alleged contract of purchase with the defendant is based upon two orders

168    APPELLATE COURTS OF ILLINOIS.

VOL. 104.] Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

sent from Milwaukee, Wisconsin, where the plaintiff's place of business was, to Mr. Mertz at Jacksonville, Florida, in May and June, 1894. Mr. Mertz was employed by the defendant as a traveling agent from 1890 until 1896. Prior to 1894 he called upon the plaintiffs and took orders from them for goods such as are sold by defendant; these orders were filled by the defendant. In one instance the plaintiffs handed Mr. Mertz a check for $25, payable to the order of the defendant; this check was returned to plaintiff marked paid. The plaintiffs introduced the deposition of Mertz; he testified that he received the orders of May and June, 1894, and forwarded them to the defendant to be confirmed by it; and he wrote to the plaintiffs that he had done so and did not know why the orders had not been filled. He also testified that he was employed by the defendant to take orders for it in the United States, which orders he was to send to the defendant to be confirmed or rejected at its option; that in taking orders from the plaintiffs he always told them that he took orders subject to confirmation or rejection by the defendant. The plaintiffs denied that they had ever been so told or informed. The question as to the agency of Mertz is not, was he an agent of the defendant, but what was the extent of his agency. Neither that one was the agent of another, nor the extent of such agency, if any, can be proven by the declarations of him who claims to be such agent. Maxey v. Heckethorn, 44 Ill. 437; White side v. Margarel, 51 Ill. 507; Schoenhofen Brewing Co. v. Wengler, 57 Ill. App. 184–188.

Mertz was a competent witness as to his agency and the extent thereof. Being called by appellants his testimony was that he had no authority to make a contract of sale.

It is very questionable if the extent of the authority of a particular traveling agent can be proven by showing what authority traveling agents customarily have.

As to commercial transactions, usage, if relied upon, must be shown to be certain, uniform, reasonable and so general as to furnish a presumption of knowledge thereof by both parties. Bissell v. Ryan, 23 Ill. 566; Greenleaf on Evidence, Sec. 251.

Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

While evidence of prior dealing between the parties was admissible, that shown was only that prior orders given to Mertz had been filled by the defendant; there was no showing that such orders had been treated as anything more than sent in for acceptance or rejection.

Nor is there here any question of secret instructions. The burden of proof was upon appellants to show that Mertz had authority to bind the defendant by a contract of sale. No presumption of such authority existed.

No knowledge by defendant that Mertz had ever claimed to have such authority was, shown.

The court properly instructed the jury and its judgment is affirmed.

OPINION ON REHEARING.

Upon petition for rehearing, the principal reason urged for a reversal of the judgment in this case, is that the court below erred in refusing to allow appellants to show that it is the uniform custom of foreign dealers in bulbs, hyacinths and similar property to send out agents to take orders from customers in the United States; that such orders are absolute and without any condition or right of rejection, and that is the well known usage of the trade in reference to the selling of goods throughout the United States, and has been during the last twenty-five years.

While the words usages and customs are generally used synonymously in legal writings and in popular language, they have not entirely the same significance. The expression "customs," as applied to the conduct of men does include usages, but usage does not necessarily include custom. A custom is such usage as by common consent and uniform practice has become the law of the place where it exists or of the subject-matter to which it relates. Usage is a method of dealing, adopted in a particular place or by those engaged in a particular. vocation or trade, which acquires legal force, because people make contracts with reference to it. What was once the usage of merchants in respect to bills and notes became an established custom, and hence the law as to commercial paper. So, too, the cus-

**170**     APPELLATE COURTS OF ILLINOIS.

VOL. 104.] Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

tom in the County of Kent in England, for all the sons to succeed to the father's inheritance, is the law of that county, in contradistinction to the general rule in England, under which the eldest son alone inherits. This custom of the County of Kent was known as the custom of gavel-kind and is the law of inheritance for that county. 27th Am. & Eng. Ency. of Law, 702.

Custom, to become a law, must be so ancient that the memory of man runneth not to the contrary. Usage need only be old enough to be well established in the trade or place. Sleght v. Hartshorne, 2 Johns. 531; Cole v. Skrainka, 37 Mo. App. 427; Blin v. Mayo, 10 Vt. 56.

The fundamental principle upon which the law as to usage is based, is that it entered into and was a part of the contract of the parties. 27th Am. & Eng. Ency. of Law, 712.

Contracts arise out of the intention of parties to do or not to do certain things. It thus follows that one can not be held to have contracted to do or not to do something of which he neither had, nor is presumed to have had, knowledge or notice. Usage, therefore, can not create a contract, bring one into being, where without it none exists. Sanford v. Rawlings, 43 Ill. 92; 27th Am. & Eng. Ency. of Law, 714; Ulmer v. Farnsworth, 80 Me. 500; Leach v. Perkins, 17 Me. 462; Tilley v. County of Cook, 103 U. S. 155; Savings Bank v. Ward, 100 U. S. 195; 27th Am. & Eng. Ency. of Law, 714, 725, 743.

Evidence of usage is admissible to show the true meaning of the parties in making a contract. If parties make a special contract in relation to a matter which would otherwise be determined by usage, it follows that they intended to exclude the operation of the usage since otherwise they would not have made a special contract; so if it appear that an agreement has been made upon a particular point and there is a controversy as to the terms of that agreement, such terms can not be shown by proof of the usage respecting them; in other words, the special agreement excludes the usage. 27th Am. & Eng. Ency. of Law, 716; Lonergan

v. Courtney, 75 Ill. 580; Windland v. Deeds, 44 Ia. 98; Stebbins v. Brown, 65 Barbour (N. Y.), 274.

Nor does habit constitute usage. The habit or practice of particular persons or of persons in a particular trade does not in itself constitute a usage. It is only when a practice has come to have the essential characteristics of a usage that it can be considered as such. Mason's Benevolent Society v. Baldwin, 86 Ill. 479; 27th Am. & Eng. Ency. of Law, 718.

Usages are strictly construed; are allowed to operate only upon cases clearly covered by them. As evidence of usage is admissible only because it forms a part of the contract of the parties, it will not be allowed to extend further than to make clear what the contract of the parties was. 27th Am. & Eng. Ency. of Law, 725; Leigh v. Smith, 1 C. & P. 638; Leggett v. Sands Ale Brewing Co., 60 Ill. 158.

What is sufficient usage to bind the parties is a question of law for the court. Whether the facts claimed to constitute usage have been proven is a question of fact for the jury. 27th Am. & Eng. Ency. of Law, 731; Pardridge v. Bailey, 20 Ill. App. 351.

In the present case appellants insist that evidence of usage should have been admitted to show that a contract was actually made. In other words, the endeavor is to create a contract by usage; to prove its existence by proof of usage.

Appellants do not claim to have done other than to have given orders to an agent of appellee. They insist that the usage of the trade is that such orders are absolute and create a contract so soon as they are made. In support of their case they took the deposition of the agent to whom they sent the orders. Of this deposition they read only a portion. The portion which they read contains the following : " I received from Currie Brothers about June, orders for the purchase of hyacinths from the defendants, which original orders I mailed to the Syndicate to be confirmed by them. The purpose of that was in case of lower prices and also in regard to the quantity of bulbs sold." It thus appears by plaint-

172 · APPELLATE COURTS OF ILLINOIS.

VOL. 104.] Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

iffs' evidence that the agent of the defendant through whom they dealt and through whom all previous dealings with the defendant had been, took the orders, not as absolute, but as subject to confirmation. As before said the plaintiffs did not read in evidence all of the deposition taken by them; a part of that not read is as follows: "Every year when I was with the Syndicate, about February, there was a meeting of the directors at the Syndicate office and I was employed to go to the United States to take orders for the Syndicate, which orders I should send to the Syndicate to be confirmed or refused at their option. Every year I was employed by the Syndicate, I had negotiations with Currie Brothers. I always told them that I took orders subject to confirmation or rejection of the Syndicate."

The orders of the plaintiffs under consideration were not given to the agent of the defendant when he called at their place of business; they were forwarded to him from Milwaukee, Wisconsin, to his place of business in Jacksonville, Florida. The first order, dated May 7, 1894, is, among other things, for

"10,000 White Roman Hyacinths 11 to 15 at *50* frs.
40,000 " " " 12 to 15 at *60* frs.
"We will renew the right of adding to our order at above prices until June 1st. Should the price decline in the meantime we expect to get the benefit of it.
Respectfully yours,
CURRIE BROS."

The second order is dated Milwaukee, June 5, 1894, and is as follows:

"C. MERTZ, JACKSONVILLE, FLA.

DEAR SIR: Add to your order 10,000 White Roman Hyacinths 12 to 15 at *55* frs. This order is given on *condition* that you accept our previous order at the following prices: Roman 11 to 15—*45* frs.; 12 to 15—*55* frs. The order was accepted by you with the distinct understanding that we should have the benefit of any decline in prices. We shall probably want to add further to our order of Romans, but do not delay shipping on that account.
Respectfully,
CURRIE BROS."

Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

In the order of May 7th, whether the White Roman Hya-
cinths were ordered at fifty francs each, per dozen, per
hundred, per thousand, or per ten thousand, does not appear.

The order claims, and if filled, would be an acceding to
the asserted right of adding to the order "at above price"
(whatever that is) until June 1st. The order also declares
an expectation to get the benefit of any decline in the
price of flowers. In other words, the order in effect was
for the articles mentioned in it and such as plaintiff might
see fit to add thereto at the same price until June 1st; and
with the understanding communicated to the defendant
that if prices should in the meantime decline, the articles
would be furnished at the decline. It was, then, what may
be termed a one-sided order; as, if prices went up, the ven-
dors would not get any benefit from the rise, while if they
went down the plaintiff would profit thereby; and with the
right reserved of adding to the order at above price until
June 1st. What the result of the confirmation or acceptance
of such order would be to the defendant, was a matter it
could not tell.

The second order, made June 5th, is for 10,000 more
White Roman Hyacinths, 12 to 15, at *55* frs. The previ-
ous order had been for 40,000 White Roman Hyacinths, 12
to 15, at *60* frs. That is, the second order calls for the
White Roman Hyacinths, 12 to 15, at five francs less than
the previous order. As before said, whether this deduction
of five francs is per dozen, per hundred, per thousand, or
per ten thousand, is unexplained.

The second order is also on condition that the previous
order should be accepted:

Roman Hyacinths 11 to 15—*45* frs.
"            "       12 to 15—*55*  "

The previous order was:

Roman Hyacinths 11 to 15—*50* frs.
"            "       12 to 15—*60*  "

The second order thus is conditioned upon the price at
which the first order was made being lowered, and contains
the assertion that the order, referring to the previous

174    APPELLATE COURTS OF ILLINOIS.

VOL. 104.] Currie v. Syndicate Des Cultivators Des Oignons a'Fleur.

order, " was accepted by you with the distinct understanding that we should have the benefit of any decline in price."

There was no evidence and no offer to introduce evidence to the effect that there is a universal custom among foreign dealers in such articles, that orders given, not when an agent calls, but sent to him, more than a thousand miles away, are absolute, and constitute a contract so soon as received by such agent; nor that there is any universal or other custom or usage that an order for certain articles at a certain price, with the right of adding thereto, up to a certain time in the future, are absolute, and constitute a contract so soon as received by the agent. Nor was there any evidence of usage that orders at a certain price, with a right of adding thereto up to a certain time, with the expectation expressed in the order that should goods decline in the meantime the vendee would get the benefit of the decline, are absolute, and constitute a contract so soon as received in course of mail by the agent. Nor was there any evidence, nor any offer to show that either of these orders have been received by the defendant. Mr. Mertz, to whom they were sent, testified that the letters containing the plaintiffs' orders were by him immediately sent to the manager of the Syndicate and also that he mailed the original orders to the Syndicate to be confirmed by them, but did not testify in what way he sent, or in what way he mailed. Letters from him addressed to the plaintiffs were offered in evidence, in which he says that he has heard nothing from these orders, and can not understand why he does not hear.

Ordinarily a traveling salesman goes to the place of business of a prospective customer and offers his goods upon certain terms. Nothing of the kind was done as to the goods under consideration.

There was no evidence tending to show that the defendant, by agent or otherwise, ever offered to sell to the plaintiffs hyacinths, bulbs or other articles upon the terms contained in either of the orders sent to Mertz at Jacksonville; nor that either of such orders was accepted.

In the case of Austrian & Company v. Springer, 94 Mich. 343, to which our attention is called, the order was given to and accepted by the agent upon his call in the usual course of his employment at the place of business of the plaintiff. The reception of the order was acknowledged by the defendant by letter from his place of business. The order was absolute, certain, definite and unconditional, without reservation of right to add thereto or to benefit from a decline in prices.

We are not called upon to express an opinion as to whether the doctrine expressed in the opinion in that case is the rule in Illinois. That question is not presented by this case. The petition for rehearing is denied.