DANCIGER et al. v. WELLS, FARGO & CO.

SAME v. PACIFIC EXPRESS CO.

(Circuit Court, W. D. Missouri, W. D. July 5, 1907.)

Nos. 3,222, 3,223.

1. COURTS—JURISDICTION OF FEDERAL COURT—DISTRICT OF SUIT.

A suit by a shipper against a carrier to require it to receive and transport property tendered for shipment involves a question of general law, and, where a diversity of citizenship exists between the parties a federal court acquires jurisdiction on that ground alone, and the suit may be brought in the district of which either complainant or defendant is an inhabitant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 811.

Diverse citizenship as a ground of federal jurisdiction, see notes to Ship v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

2. CARRIERS—SUIT TO COMPEL INTERSTATE CARRIER TO RECEIVE AND TRANSPORT GOODS—JURISDICTION OF COURTS.

A suit to compel an interstate carrier to receive and transport goods tendered to it for shipment, which it wholly refuses to do, is one to compel the performance of a duty imposed on it by law, and within the jurisdiction of the courts; and complainant is not required to resort in the first instance to the Interstate Commerce Commission.

3. SAME—EXPRESS COMPANIES—DUTY TO ACCEPT C. O. D. SHIPMENT.

>    There is no common-law duty resting upon an express company to act as collection agent of the shipper and require payment for the goods as a condition of their delivery; but such obligation, if assumed, arises only from an independent contract, express or implied, which the company is at liberty to refuse to make in any particular case, notwithstanding any usage or custom it may have established or followed, which cannot enlarge its legal duty as a carrier.

On Application for Temporary Injunction.

J. M. Schoenheit, J. H. Atwood, and I. J. Ringolsky, for complainants.

Lathrop, Morrow, Fox & Moore, for defendant Wells, Fargo & Co.

J. N. Watson, for defendant Pacific Express Co.

POLLOCK, District Judge. By the bills of complaint presented in the above-entitled suits there is involved the rights of complainants, wholesale liquor dealers, citizens of the city of Kansas City and state of Missouri, to a mandatory order of injunction commanding defendants, common carriers doing a general express business, and citizens of states other than Missouri, on payment or tender of the usual amount charged for such service by defendants, to receive and carry liquors sold by complainants in the state of Missouri to many persons throughout the country, on written orders received, and to deliver such consignments of liquor to the person ordering the same, and to collect from such person the purchase price thereof and return it to complainants, or, failing to so deliver to the purchaser or to collect the purchase price for the same, to return the liquors to complainants at their cost; in other words, the right of complainants to compel by injunction in this court the doing of what is commonly known as "C. O. D. express business." At the time of the filing and presentation of the bills of complaint in the above-entitled suits, restraining orders were issued upon the giving of a bond by complainants, commanding the doing of the C. O. D. express business by the defendants for complainants until the matter might be presented to the court upon affidavits, oral argument, and briefs for a temporary order of injunction.

Complainants have a large, well-established business in the city of Kansas City, Mo., where under certain regulations it is lawful to engage in the wholesale liquor business, and such business has been built up by complainants at large cost, and has been conducted through the express companies on the C. O. D. express plan. About the 15th day of May the express companies, on account of state legislation in many sections of the country unfavorable to the transaction of such business, and on account of the annoyance, expense, and trouble incident to the conduct of such business, gave notice to all persons that the further conduct of the C. O. D. liquor business by defendants would cease and terminate on the 1st day of June. The principal question here presented is the right of the defendant companies upon notice to cease the conduct of such business, or the opposing right on the part of complainants to compel the defendants through the interposition of a court of equity to command the performance and further conduct of such business. While there are other questions raised for determina-

tion here, the above is the principal contention. It is apparent from this statement of the controversy that mandatory injunctive relief is the life of these suits; that the business of complainants will suffer greatly if the same is not destroyed by the failure to grant such relief.

Whatever may be the effect of the orders which should be made at this time in these suits, it is apparent the same must be based upon the rights of the parties under the law. If complainants have, as claimed, built up a lucrative business in this manner through the defendant companies, which will be destroyed if the defendants are not required to further conduct such business, without legal obligation on the part of the defendants to further continue such business, it is apparent complainants have built up such business, dependent alone upon the will of the defendants, and, if loss should occur from an order which refuses the relief sought by complainants, in such case complainants have brought such loss on themselves; or, if the established business of complainants has been built up on a right founded in the law to compel defendants to proceed with the transaction of such business, in such case its further continuance must be ordered by this court. In passing to a consideration of what I deem the controlling questions involved in this litigation, I shall but briefly mention certain of the contentions of solicitors for the defendants which I do not deem of merit or well taken. And I may state, further, I have not read and considered the ex parte affidavits and proofs offered in these cases, preferring to base my decision on questions purely of law. Hence I shall assume for the purpose of this decision that all the business transacted by the complainants was based upon bona fide written orders sent by customers of complainants to complainants in good faith, and filled by complainants in Missouri at their place of business in good faith, and that all the business heretofore transacted by complainants, and those shipments tendered to the defendants after June 1st, on which these suits are predicated, were ordered by the persons to whom complainants attempted to consign them in good faith.

It is first contended by the defendants that these suits are not brought in the proper federal district, and for that reason this court does not have jurisdiction, because such jurisdiction is not founded alone on diverse citizenship, but that the suits also raise federal questions, and hence should have been brought in the district whereof the defendants are citizens. A consideration of this question impels me to hold this contention of defendants is not sound. The relief here sought is an order compelling the defendants to perform an obligation imposed upon them by the law, and is brought by a citizen of this state against citizens of other states; the jurisdictional amount being involved. Hence to my mind the question involved is one of general law, and, being based upon the diverse citizenship of the parties, may be brought and maintained in the district of the residence of the complainants.

A further contention made by the defendants is that the court of exclusive original jurisdiction in this controversy is the Interstate Commerce Commission, and that this court has no jurisdiction in the first instance to afford to complainants the relief here sought; and much reliance is placed by the defendants on the case of Texas &

Pac. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553. From a reading of that case I do not consider it applicable to the state of facts here presented. If the controversy here was as to whether the defendants were charging excessive or unreasonable rates for the shipments tendered by complainants, the case relied upon would to my mind be in point; but as the ground of relief sought by complainants in the case at bar is the performance by defendants of a duty imposed upon them by law, which they wholly neglect and refuse to perform, I think such question is one for the determination of the courts.

Laying aside, for the purpose of this decision, the questions raised by the affidavit filed in the case, and coming, now, to the real question of merit, it is this: Does the law compel the defendants to perform the service demanded by complainants? It must be observed the defendants have not denied, and do not now deny, the right of complainants to require them to carry interstate shipments of intoxicating liquors to any point reached by the defendants' lines, whether such points be within states where the sale of intoxicating liquors is prohibited or not. The sole question here raised is the right of the complainants to insist on the defendants carrying their C. O. D. shipments of liquors; complainants tendering or paying the lawful charges demanded by the defendants. Is such duty imposed upon the defendants by the law? The courts have many times been called to pass upon the common-law obligations of express companies in regard to C. O. D. shipments. Mr. Elliott, in his work on Railroads (volume 4, § 1530), says:

"A common carrier is not obliged to collect or require the payment of the purchase price of goods offered to it for transportation before delivering them to the purchaser, as one of its common-law duties."

In Amer. & Eng. Encyc. L. (2d Ed.) vol. 12, p. 533, it is said:

"There is no common-law duty devolving upon an express company to act as the collecting agent of the shipper. Such obligation arises only by contract, express or implied."

In Cox, Hill & Thompson v. Columbus & Western Railway Co., 91 Ala. 392, 8 South. 824, it is held:

"From his mere avocation, or the nature of his business, no implied obligation or duty devolves on a common carrier to require payment of the price of goods transported by him as a condition of their delivery. Such obligation arises only by contract, express or implied."

In Adams Exp. Co. v. Commonwealth, 92 S. W. 932, 29 Ky. Law Rep. 224, 5 L. R. A. (N. S.) 630, the Court of Appeals held:

"Appellant cannot shelter itself under its common-law duty as a common carrier of goods. There is no common-law duty devolving upon a common carrier to act as the collecting agent of the consignor. That is a matter of private contract, and one which the carrier may enter into, or refuse, at its option. When it does make such a contract, it stands with reference to it just as any other agent."

Moore, in his work on Carriers (section 31), says:

"Where goods are sent, with instruction not to deliver them until they are paid for, the carrier, who accepts the goods with such instructions, under-

takes not to deliver them unless the condition of payment is complied with. In addition to its obligations as a carrier, it becomes the agent of the consignor to collect and receive the price of the goods and return the money to the consignor. This obligation or duty is not one arising or implied from the nature of its business, but is based upon contract, express or implied."

### In Hale on Bailments & Carriers, p. 451, it is said:

"When goods are received by a carrier for transportation C. O. D., the contract of the carrier in connection therewith is not only for the safe carriage and delivery of the goods to the consignee, but there is a further agreement to 'collect on delivery' and return to the consignor the amount so received. The common law places no obligation on a common carrier to do 'C. O. D.' business. Such obligations are assumed only by contract."

### In Hutchinson on Carriers, § 389, in speaking of C. O. D. shipments, it is said:

"The carrier who accepts the goods with such instructions undertakes that they shall not be delivered unless the condition of payment be complied with, and becomes the agent of the shipper of the goods to receive such payments. He therefore undertakes, in addition to his duties as carrier, to collect for the consignor the price of his goods."

### In United States Express Co. v. Keefer et al., 59 Ind. 263, it is said:

"Whereas, in this case, the goods are marked 'C. O. D.,' the contract of the common carrier, in connection therewith, is not only for the safe carriage and delivery of the goods to the consignee, but he further contracts with the consignors that he will 'collect on delivery' and return to the consignor the charges on said goods."

### In McNichol v. Pacific Express Co., 12 Mo. App. 401, it is said:

"So far as we know there is no common-law duty upon the carrier to act as collecting agent of a shipper. The law does not attach any peculiar liability to such an office when the carrier assumes it, such as it attaches to its ordinary office of public carrier. When he undertakes such a duty, his liability is the same as that of a bank, attorney at law, or any other collecting agent, and it arises upon the special contract by which he undertakes the duty, and not upon the ancient custom, which is the foundation of his peculiar liability as carrier."

### In Fowler Com. Co. v. C., R. I. & P. Co., 98 Mo. App. 210, 71 S. W. 1077, it is said:

"While a carrier will be liable for a delivery without collecting a draft attached to the bill of lading, and will also be liable for nondelivery to consignee by reason of loss of property and the like, yet his liability arises from different sources. In the former instance there is no common-law duty to become the shipper's agent to collect purchase money, and he is only liable by reason of breach of an implied contract that he will collect before delivery. Hutchinson on Carriers, § 391. In the latter case the liability arises from a breach of duty to safely ship and deliver. And, while the measure of damages in some cases may be the same in both instances, it would frequently not be. If he fails to collect the draft, as by contract bound, he would only be liable to the amount thereof, though the property itself was of much greater value; but, if he fails to deliver as in duty bound, and the property is lost, he is liable for the full value."

From a consideration of the above authorities, and many others, it is clear express companies are under no obligation or duty at the common law to engage in the C. O. D. carriage of goods, but that the obligation imposed to collect the purchase price of the article shipped

and return the proceeds to the consignor is an obligation which must rest in contract, and not in an obligation imposed by the law.

In conflict with the rule announced by the text-writers and in the foregoing decisions is the case of Crescent Liquor Co. v. Platt (C. C.) 148 Fed. 894, decided at the circuit by Judge Goff. From a reading of that case it is quite clear the learned judge in his opinion passes directly upon the question here involved. It is there said:

"The C. O. D. package is in many respects similar to the open package. The consignee generally pays the express charges in both cases, and in neither instance is the package delivered unless such charges are paid; the same not having been prepaid by the consignor. In addition, in the C. O. D. package, the consignee pays the price of the article shipped, and the carrier transports the cash so received to the consignor, taking pay therefor. In substance, it is the same as if the consignee should send by the express company the sum of money he owes the consignor, paying the company for its services. Can the carrier decline to accept such sum and refuse to transport it? The difference in the shipments mentioned, when analyzed, is so slight that the law has trouble, so far as the carrier is concerned, in seeing the distinction. Should not the consignee have the right to contract with the consignor that he will send the price of the consignment by the carrier who delivers the package? If not, why not? The carrier is for the use of the public, and the public should not be deprived of such use by unreasonable regulations. Why should the express company complain; for it receives its toll for returning the price of the shipment, as well as for transporting the package?"

The precise question, however, involved in that case, was the right of complainant to require the defendant to carry its goods; for in the opinion it is said:

"The express company, while recognizing its duty as a common. carrier to all other shippers in West Virginia, declines to receive from complainants, and from all other retail liquor dealers in that state, any consignments of liquor for delivery to consignees at any West Virginia point on any terms or under any conditions."

It is further said: ·

"The avocation discriminated against is that of the liquor dealer, and the only reason assigned for such discrimination is the statute heretofore mentioned."

While it is evident, as has been seen, the question here presented was ruled by Judge Goff in that case, yet the decision involved the right to require the express company to perform its common-law obligation to carry at all, and not directly the right to require it to engage in the C. O. D. business. In accordance with the great weight of authority, I am of the opinion there is no common-law duty resting upon an express company to engage in the C. O. D. business, and I am further of the opinion the recent rate law does not attempt in any way to enlarge the common-law liability of express companies.

However, it is contended by complainants that it has been the usage and custom of express companies for many years in the past to engage in this class of business, and that defendants have so engaged, and have advertised to the public their willingness to undertake this class of service, and have established rates charged for the performance of such service; therefore that by such usage and custom the common-law obligation of express companies has been enlarged so as to include

the C. O. D. business, and for this reason it is a duty resting upon the defendants, which complainants may compel. The proposition is stated by complainants in their brief as follows:

"If making collections on C. O. D. packages is not one of the duties that express companies, as common carriers, owe to the public, yet if they hold themselves out to the public as willing to make contracts for collecting on C. O. D. packages, they must, as quasi public corporations, make these contracts and collections for any person who will comply with their general rules in relation thereto."

While it is undoubtedly true express companies, for many years, at least, have engaged in the practice of carrying C. O. D. shipments, yet if, as held in those cases defining the common-law duties of express companies, the obligation to collect from the consignee and return the price of the shipment to the consignor is one resting in implied contract, and not on the common-law obligation of the carrier, it is evident such practice would not create a legal duty on the part of the carrier, unless it consented to the engagement; and not being a common-law duty, but an obligation resting alone on an implied contract, the express company may at any time terminate such practice and refuse to be bound by an implied agreement without its consent. The practices adopted by the carrier, and what it usually does, or what it has customarily done, may be inquired into for the purpose of interpreting the implied contract and the extent of its obligation; but such usages and customs cannot be relied upon to create a legal liability where one does not otherwise exist. This is clearly held in State v. A., T. & S. F. Ry. Co., 176 Mo. 687, 75 S. W. 776; Ulmer v. Farnsworth, 80 Me. 500, 15 Atl. 65; National Bank v. Burkhardt, 100 U. S. 692, 25 L. Ed. 766; Tilley v. County of Cook, 103 U. S. 155, 26 L. Ed. 374.

In National Bank v. Burkhardt, supra, Mr. Justice Swayne, delivering the opinion of the court, says:

"A general usage may be proved in proper cases, to remove ambiguities and uncertainties in a contract, or to annex incidents; but it cannot destroy, contradict, or modify what is otherwise manifest. Where the intent and meaning of the parties are clear, evidence of a usage to the contrary is irrelevant and unavailing. Usage cannot make a contract where there is none, nor prevent the effect of the settled rules of law. Barnard v. Kellogg, 10 Wall. 390, 19 L. Ed. 987; Bliven v. New England Screw Co., 23 How. 433, 16 L. Ed. 514; Collender v. Dinsmore, 55 N. Y. 200, 14 Am. Rep. 224; Adams v. Goddard, 48 Me. 212; Thompson v. Riggs, 5 Wall. 674, 18 L. Ed. 704; Dykers v. Allen, 7 Hill (N. Y.) 497, 42 Am. Dec. 87."

In passing on the application here presented for temporary injunctive orders, mandatory in character, it is sufficient to say the question here involved is one of very large importance, and its correct solution of grave doubt. The great weight of authority is apparently against the contention made by complainants. The relief sought, as has been seen, is of the very life of the bills of complaint here presented. The case is unlike one where relief is sought by injunction to preserve the status of the subject-matter of the litigation pendente lite. The language employed by Judge Meek in ruling a similar application is to my mind peculiarly appropriate to the situation here presented.

"The relief sought by complainant and intervener pendente lite is the same as the relief ultimately sought by final decree. It is mandatory in its nature, compelling all the defendants to the performance and the continued performance of a service for complainant and intervener. At this stage of the proceeding the granting or the withholding of the relief rests within the sound judicial discretion of the chancellor. At the threshold of the investigation this discretion should not be exercised in the granting of the relief, unless it is plainly and unmistakably manifest that complainant and intervener are entitled to it. I am not now prepared to hold that the collection from the consignee for the consignor of the purchase of consignments of intoxicating liquors is imposed on the express companies as one of their duties as common carriers."

Laying aside the proofs presented in this case, and regarding the questions presented in their legal aspect alone, I am so strongly inclined to the opinion that the ultimate holding in the case on final decree must be that the rights claimed by complainants and here sought to be enforced are not obligations imposed upon the defendants by law, but such matters as rest in contract, and, being such, defendants may undertake the performance of the service for complainants or not, as they deem fit, that in the exercise of a sound discretion I should leave the decision of such question until final decree.

The order will therefore be that the restraining order heretofore entered will be set aside, and the application for a temporary injunction refused.