# COMMONWEALTH v. LOUIS ZELT ET AL.

APPEALS BY DEFENDANTS FROM THE COURT OF QUARTER SESSIONS OF WASHINGTON COUNTY.

Argued October 22, 1890—Decided January 5, 1891.
[To be reported.]

1. The word "known," in § 17, act of May 13, 1887, P. L. 113, prohibiting the furnishing of liquor to persons of known intemperate habits, does not

Syllabus.

mean that such habits must be " known " to the furnisher; that phrase is but descriptive of a class of persons to whom a dealer sells at his peril, his intent in making the sale being immaterial.

2. Every man has a reputation for sobriety or for intemperance, in the community wherein he resides; and, when a man becomes generally known as an intemperate man in his neighborhood, a person who sells him liquor within that neighborhood, must ascertain and take notice of such reputation at his peril.

3. While, as was held in Leisy v. Hardin, 135 U. S. 100, a state cannot prohibit by a general law the importation from another state of an article of commerce, and its sale by the importer in the original package in which it was imported, the states may, in some instances and for particular purposes, regulate the sale of such packages by partial prohibitions thereof.

4. State laws prohibiting the sale of liquors to minors and to persons of known intemperate habits, are valid regulations as applied to imported liquors sold in the original packages, since they do not interfere with the general power to import and sell, and but incidentally affect interstate commerce by protecting two classes who are wards of the law, one of them not sui juris and the other practically so.

5. Whether a number of quart and pint bottles of whiskey or beer, packed in boxes or barrels, and so shipped into this state, could have been taken out of the box or barrel containing them, and retailed singly by the importer, as original packages, under the protection of the federal constitution, prior to the act of Congress of August 8, 1890, not decided.

6. A defendant, who, in a prosecution for unlicensed sales of liquors made by him prior to August 8, 1890, set up as a defence that he was the agent of an importer, selling the liquor in the original packages as imported, assumes the burden of establishing such agency by competent evidence, to such an extent as to throw a reasonable doubt upon the commonwealth's case.

7. Under the act of May 13, 1887, P. L. 108, directing that offenders against its provisions shall be imprisoned in the county jail, the courts of such counties as are authorized by act of March 8, 1871, P. L. 184, to impose sentences of imprisonment in the Allegheny county workhouse, in lieu of the county jail, may sentence such offenders to confinement in said workhouse.

8. When a person holding a brewer's license granted by the Court of Quarter Sessions, and acting, not under such license, but as the employee of an unlicensed person, sells liquor, not of his own make, for his employer, he is to be sentenced, if convicted of a violation of the act of May 13, 1887, in and by such sales, to the punishment prescribed for unlicensed offenders.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 188, 189, 190 October Term 1890, Sup. Ct.; court below, Nos. 24, 25 August Term 1890, Q. S.

Statement of Facts.

On August 22, 1890, to No. 24 August Term 1890, in the court below, the grand jury returned as a true bill an indictment charging Louis Zelt and John B. Porter with selling vinous, spirituous, malt and brewed liquors, and admixtures thereof, without a license; and on the same day, to No. 25 of the same term, an indictment was found charging the same defendants with having furnished liquors to Fred Chivers and others unknown, they being persons of known intemperate habits. The defendants, in each case, pleaded not guilty.

The two indictments were tried together on August 27, 1890, when the following facts were shown:

In July, 1890, the defendants were keeping a place for the sale of liquors in a building owned by the defendant Zelt, in the borough of Washington. Witnesses for the commonwealth testified that they had purchased liquors there in pint and quart bottles, in some instances from Zelt and in others from Porter. Fred Chivers testified that Zelt sold to the witness a quart bottle of lager beer. There was evidence also of the sale of beer by the defendants in kegs. Upon cross-examination of the commonwealth's witnesses, it appeared that the bottles of liquor sold by the defendants were enclosed in pasteboard boxes or paper wrappings, stamped with the name of the manufacturer. A number of witnesses, called by the commonwealth, gave testimony tending to prove that Fred Chivers was a man of intemperate habits, and known as such in the community.

The testimony of the defendants, in regard to the character of the business carried on by them, was in substance to the following effect:

Louis Zelt was the owner of a building formerly used by him as a brewery. John B. Porter, who resided at Mansfield, Allegheny county, having received from the firm of Thomas Mears' Sons, liquor dealers at Steubenville, Ohio, a written paper which was put in evidence, appointing him to act as their agent at Washington, Pa., for the sale of liquors, rented from Zelt, for use in the carrying on of the business of such agency, a part of Zelt's then unused brewery building, for the consideration of $75 per month; employed Zelt to act as a salesman at a compensation of $3 per day, and hired two teams and wagons from Zelt, for use in delivering goods to customers, at $5 per day. Porter's arrangement with Thomas Mears'

Charge of Court below.

Sons was, that they were to ship him whiskey from their establishment at Steubenville, Ohio, and have beer shipped to him from Wheeling, W. Va.; and, as a compensation for selling it, he was to retain 25 per cent of the receipts, the expenses of the business, including the rent and other items above mentioned, being paid out of the money of the firm. In pursuance of this arrangement, beer and whiskey were shipped from Wheeling and Steubenville, respectively. The beer came in kegs and bottles, the latter wrapped in heavy paper or pasteboard, and placed in barrels without heads, for shipment. The whiskey was put up in bottles, the corks of which were sealed with wax, stamped with the initials of the firm of Thomas Mears' Sons, the bottles being enclosed in pasteboard boxes or paper sacks, with the name of that firm printed thereon, and being packed and shipped in open boxes and barrels. The liquors, upon their receipt at Washington, were sold out by the defendants by the keg and bottle, the wrappings of the bottles being undisturbed, and no liquors were sold by them other than those so shipped by Thomas Mears' Sons.

The defendant Zelt testified that Fred Chivers was not known to him to be a man of intemperate habits, and other witnesses for the defendants testified that they did not consider Chivers a man of known intemperate habits.

At the close of the testimony, the court, McILVAINE, P. J., charged the jury in part as follows :

We instruct you that, prior to the eighth day of this month, a resident of Ohio, under the constitution of the United States, could ship into this state, in the course of his business, as an article of commerce, spirituous, vinous, malt and brewed liquors and admixtures thereof, and by himself or by his duly authorized agent, dispose of or sell them as shipped and imported in the original packages, and that the Brooks law, so far as it would, in its letter, interfere with this right is inoperative ; but, the moment the liquor thus imported ceases to be an article of trade between the state of Ohio and this state, and becomes an article of trade in this state, then the selling thereof in this state, without license, becomes an offence under the Brooks law. . . . .

This brings us to the questions of fact involved in this case, and they are as follows :

Charge of Court below.

1. Did the defendants sell spirituous, vinous, malt or brewed liquors or admixtures thereof, without having first obtained a license so to do, as charged in the indictment?

2. If so, were the liquors sold the property of Thomas Mears' Sons, residents of Ohio; and was the defendant, John B. Porter, their bona fide agent, and did he so act when he sold the liquors; and was Louis Zelt really his clerk?

3. Were the liquors sold imported into this state from Ohio, in the due and ordinary course of trade between the state of Ohio and this state; and were they sold in the original packages of commerce as shipped, without being broken, separated, and retailed so as to suit customers who did not wish to buy the whole of the original package as shipped? . . . . .

These, gentleman, are questions of fact for you, and it is for you to determine whether or not there was a bona fide agency, and whether or not this liquor which was shipped here was the liquor of Thomas Mears' Sons, and whether or not this really was their establishment, and whether or not the liquor was sold as imported goods, and whether or not this man Porter was acting solely as agent, not setting up an establishment of his own and making a pretended agency, a cover, in order to violate this law that we have upon our statute books, which prohibits the sale of liquor without first obtaining a license. . . . .

In the second case, the defendants are indicted for furnishing liquor to men of known intemperate habits; and, in this indictment, the party to whom it is alleged the liquor was sold or furnished and who was a man of known intemperate habits, was Fred Chivers. . . . . In making out a case of this kind it is necessary for the commonwealth to show, first, that the liquor was furnished by the defendant or defendants to the man named in the indictment. . . . . The second necessary ingredient in this crime is, that the party named in this indictment, that is, Chivers, was a man of known intemperate habits; that is, was a man who used intoxicating drinks to excess, and so much so that it became a habit of his. Did he use it frequently to excess, and so that it became a habit, and was that known in the community where he lived, and where the defendants furnished the liquor, so that the defendants could be presumed to have known the habits of this man. The defendants have asked us to charge you that the commonwealth must prove

Charge of Court below.

that the defendants knew this. We think this is not necessary; because it would be hard to bring proof that the defendants had actual knowledge, and the most the commonwealth could be required to do is to prove that the witness was a man of known intemperate habits in the community where the defendants lived and where the sales were made, so that it could be presumed, as it would be their duty, entering into a business of that kind, that they knew his habits. . . . .

In both of these cases it is the business of the commonwealth to make out its case beyond a reasonable doubt. I might say, in the charge of selling liquor without license, the burden is on the commonwealth primarily to make out its case beyond a reasonable doubt, that the defendants sold the liquor, and that they had no license. [The defendants' setting up that Porter was an agent of an importer, the burden is then on them to show that, or to show such a state of facts that it throws a doubt upon the commonwealth's case, so you could say you had a reasonable doubt as to the charge as made.] [4] The burden of proof always rests on the commonwealth to make out a case beyond a reasonable doubt.

The following points are submitted by the defendants:

2. If the jury believe from the evidence that the defendant, John B. Porter, in the sale of the liquor charged, was acting only as agent, under proper authority, for the firm of Mears' Sons, of Steubenville, Ohio, a licensed firm, engaged in the wholesale liquor business in that city, and that said firm consigned said liquor to John B. Porter, put up in original packages, sealed and stamped by them at their place of business in Steubenville, Ohio, and that the same were sold by him as such agent in the said original packages, and in no other way, then there can be no conviction for selling without license in this case, and their verdict should be for the defendants.

Answer: Affirmed.

5. Unless the jury are satisfied, beyond a reasonable doubt, by the evidence in the case, that the defendants knew, at the time of furnishing the liquors named in the indictment to Fred Chivers, that said Fred Chivers was a person of know intemperate habits, their verdict should be not guilty.

Answer: This is refused, if the point means that the commonwealth is bound to prove directly that the defendants had knowledge of the habits of Fred Chivers.[1]

Charge of Court below.

7. The state of Pennsylvania has no power to pass a law making a sale of liquors to a person of known intemperate habits a criminal offence, when such liquor is shipped into this state in original packages, under the provisions of the constitution and laws of the United States with reference to commerce between the states, until such liquor, so brought in, in such original packages, has become, by breaking bulk or sale, a part of the common property of this state. And any such law, now on our statute books, has no application in this case.

Answer: This is refused.[2]

The jury rendered a verdict finding both defendants guilty of the charge of selling liquor without license, acquitting the defendant Porter of the offence of furnishing liquor to men of known intemperate habits, but finding the defendant Zelt guilty thereof.

The district attorney having moved for judgment, the following motion was made on behalf of the defendant Zelt:

And now August 30, 1890, Louis Zelt, one of the above named defendants, having been found guilty by the jury of selling vinous, spirituous, malt and brewed liquors without license, and of furnishing the same to persons of known intemperate habits, contrary to the act of assembly in such case made and provided, and it appearing from the records of said court that a license was granted to the said Louis Zelt to sell malt and brewed liquors, which license was issued on May 26, 1890, for a period of one year from May 1, 1890, and the said Zelt, having been called for sentence, through his counsel moves the court that sentence be imposed upon him under the following provision of the act of assembly approved May 13, 1887, to wit: "Any person having license, who shall hereafter be convicted of violating any of the provisions of the license laws, shall be subjected to a fine of not less than one hundred dollars nor more than five hundred dollars," etc.

By the court: Motion refused; exception.[5]

The court then pronounced judgment, sentencing the defendants, upon the indictment at No. 24 August Term, to pay the costs of prosecution and a fine of five hundred dollars, and to undergo imprisonment in the workhouse in Allegheny county, for a period of four months:[3] and sentencing Louis

Arguments.

Zelt, upon the indictment at No. 25 August Term, to pay the costs of prosecution and a fine of fifty dollars, and to undergo imprisonment in the workhouse in Allegheny county for a period of thirty days.[3]

Thereupon, having obtained special allocaturs from Mr. Justice CLARK, the defendants took their several appeals, at Nos. 188 and 190 respectively, from the judgment of the court below in No. 24 August Term 1890 ; and the defendant Zelt took the appeal to No. 189 from the judgment of the court below in No. 25 August Term 1890 ; assigning for error :

1, 2. The answers to defendants' points.[1] [2]

3. The sentencing to imprisonment in the Allegheny county workhouse.[3]

4. The part of the charge embraced in [ ] [4]

5. The refusal of the motion of defendant Zelt.[5]

*Mr. J. M. Braden* and *C. S. Fetterman*, for the appellants :

1. The sentence to imprisonment at the workhouse in Allegheny county is erroneous, because by § 15, act of May 13, 1887, P. L. 108, it is expressly provided that any person convicted thereunder shall be sentenced to imprisonment in the county jail, and the court had no power to vary or alter the punishment directed by the statute : § 13, act of March 21, 1806, 4 Sm. L. 332; Daniels v. Commonwealth, 7 Pa. 371 ; Krœmer v. Commonwealth, 3 Binn. 584. Again ; the burden of proof in a criminal case never changes, but is always on the commonwealth ; and the court laid too heavy a burden on the defendants in charging that it was incumbent on them, after admitting the sales testified to by the witnesses for the prosecution, to show such a state of facts as to throw a doubt upon the commonwealth's case : Pauli v. Commonwealth, 89 Pa. 432; 1 Bishop, Crim. Proc., §§ 1050, 1051.

2. In providing for the punishment of sales of liquor to persons of known intemperate habits, in § 17, act of May 13, 1887, the legislature meant that such persons must be known to the seller to be of that character. It was not intended to ensnare law-abiding men, engaged in a legitimate business. And it is not to be presumed that the legislature designed to punish with fine and imprisonment a liquor seller, who, after using all due diligence, care and caution, in his efforts to learn

Arguments.

the habits of his customers, unwittingly makes a sale to one who, it turns out, was known to his intimate associates and friends and to a few night watchmen and policemen, to be in the habit of getting drunk occasionally, but who has except to this extent carefully concealed his habits of intemperance : Commonwealth v. Wilhelm, 6 Pa. C. C. R. 30 ; Bishop on Statutory Crimes, § 1022. The facts of the present case show an outrage upon justice.

3. Prior to the act of Congress approved August 8, 1890, known as the original package bill, the state of Pennsylvania had no power to pass a law making the sale of liquor, shipped into this state out of another state, and sold to a man of intem perate habits, in the original package, as so imported, a criminal offence. All license and police regulations, enacted by the various states, which in their enforcement would interfere in the least with the free and uninterrupted sale of liquor, or any other commodity, shipped from one state into another, and there offered for sale in the original package by the importer, were void, inoperative and unenforceable : Section 8, article I., Constitution U. S.; Leisy v. Hardin, 135 U. S. 100 ; Lynn v. Michigan, 135 U. S. 161. Louis Zelt had a license granted by the Court of Quarter Sessions of Washington county, and under the plain and unambiguous language of § 15, act of May 13, 1887, P. L. 108, he should have been sentenced to the punishment prescribed for licensed offenders against the license laws.

*Mr. W. S. Parker*, District Attorney, for the commonwealth :

1. It has already been decided that the word "known," in § 17, act of May 13, 1887, P. L. 108, does not require the commonwealth to bring home to the defendant knowledge of the intemperate habits of the person to whom he sells: Commonwealth v. Sellers, 130 Pa. 32 ; Commonwealth v. Holstine, 132 Pa. 357 ; Carlson's License, 127 Pa. 331. The decision in Leisy v. Hardin, 135 U. S. 100, will hardly be strained to set aside a state law for the protection of a disabled class, when the logic of the decision does not require it. The decision expressly recognizes the validity of laws for the protection of the

health and safety of the community, which only incidentally come in conflict with the freedom of inter-state commerce. Moreover, the verdict of the jury negatives the position that these packages of liquor were such that the laws of the United States protected their sale, or that the defendants were the bona fide agents of a foreign importer.

2. The act of March 23, 1865, P. L. 607, established a workhouse in Allegheny county for the keeping of prisoners. See also, act of February 1, 1866, P. L. 8. The act of March 8, 1871, P. L. 184, authorized the commissioners of any county in the western judicial district, to contract with the managers of said workhouse for the reception and keeping of prisoners sentenced by any court or magistrate of said counties for any period of not less than sixty days, and then provided that, in any county having such an agreement, it should be the duty of courts and magistrates, sentencing any person to imprisonment for not less than sixty days, for any crime not punishable by imprisonment in the state penitentiary, to sentence such persons to the Allegheny county workhouse. Washington county has such a contract, and said workhouse thereunder becomes, for said county, a place of imprisonment in lieu of the county jail, and the sentence in this case is in conformity to law.

3. The portion of the charge complained of in the fourth assignment does not fairly state the court's instruction. Considered in connection with the preceding and succeeding sentences, it casts no illegal burden on the defendants, and does not require the defendants to prove their defence beyond a reasonable doubt, nor relieve the commonwealth from the burden of showing guilt beyond a reasonable doubt. And to give the position taken by the appellant's counsel, as to the sentence of Louis Zelt, the appearance of merit, the facts in the case must be entirely overlooked. There was no attempt made to justify the sales under Zelt's license as a brewer, and admittedly the defendants were not acting thereunder. But the question raised has already been decided: Commonwealth v. Holstine, 132 Pa. 357. The commonwealth's view of these cases is clearly supported by the evidence, which was ample to support the verdict, without quibbling over the definition of an "original package of commerce."

Opinion of the Court.

OPINION, MR. CHIEF JUSTICE PAXSON:

The defendants were jointly indicted in the court below for selling liquor without a license. Upon this indictment they were both convicted. A second indictment was found against them, charging them with selling liquor to persons of known intemperate habits. Upon this charge, the jury convicted Zelt, and acquitted the defendant Porter. A special allocatur for an appeal having been allowed by our Brother CLARK during vacation, the cases were heard at the last term in the Western District. Both cases were argued together, and were contained in one paper-book, and will be disposed of in one opinion. In the paper-book, reference is made to three cases, and the term and number are given of three; but I find only two. This is mentioned to avoid misapprehension. The cases now disposed of are Nos. 24 and 25 of August Sessions, 1890, of the court below.

At the trial, in the sessions, it was claimed, and there was some evidence to prove, that the defendant Porter was acting as agent for Thomas Mears' Sons, wholesale liquor dealers of Steubenville, Ohio; that he sold no liquors, except such as were furnished by that firm and shipped to defendant Porter at Washington, Pa., and it is claimed they were sold only in the original package. Beer was shipped in kegs, and beer and whiskey were shipped in bottles packed in barrels. The defendant Zelt alleged that he was hired by Porter as a clerk or salesman, at a fixed salary. The proof showed sales of liquor by the keg, the quart, and the pint. With this brief statement of facts we turn to the assignments of error.

The first alleges that the court erred in refusing to charge as follows:

"Unless the jury are satisfied, beyond a reasonable doubt, by the evidence in the case, that the defendants knew, at the time of furnishing the liquors named in the indictment to Fred Chivers, that said Fred Chivers was a person of known intemperate habits, their verdict should be not guilty."

The jury have found that Chivers was a person of known intemperate habits, and their finding is fully justified by the evidence. Was it necessary that a knowledge of such habits must be brought home to the defendants before they could be convicted? In Carlson's License, 127 Pa. 331, we were con-

Opinion of the Court.

sidering the case of selling liquor to minors, and it was said, in the opinion of the court: " The offence of which the plaintiffs in error were guilty was that of selling liquors to minors, and the only excuse offered was that they did not know the persons to whom they were sold were minors. This ignorance is not a sufficient excuse or justification under the act of assembly. If such a defence could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes." In Commonwealth v. Sellers, 130 Pa. 32, and in Commonwealth v. Holstine, 132 Pa. 357, it was held that to sustain a conviction for unlawfully selling intoxicating liquors, under the act of 1887, it is not necessary for the commonwealth to prove a criminal intent; if the sale be contrary to law, the intent is immaterial.

We are of opinion that selling liquor to persons of known intemperate habits comes within the same rule as selling to minors, i. e., the intent is not material. The words in the statute, "persons of known intemperate habits," are descriptive of a class to whom the dealer sells at his peril. It was urged, however, that such a rule would work injustice; that in many instances a man's intemperate habits are known to but few persons, perhaps only to members of his own family, or a night watchman who may have witnessed his convivial wanderings toward his home. The answer to this is, that a man who conceals his habits does not come within the class. It is only where his intemperance has become so conspicuous as to form a habit, and that habit is known, not merely to his family or to a night watchman, but to his friends and neighbors and the community in which he lives, that the law forbids and punishes the sale of liquor to him. Every man has a reputation for sobriety, or for intemperance, in the community in which he resides, just as every man has a reputation for integrity, or for truth, and such reputation is generally known. None know better than saloon-keepers themselves the habits and reputation of their neighbors, as to drinking, and when a man is known as an "intemperate man" in his neighborhood, not known to every one, but known generally to be such, the person who sells him liquor must take notice of that fact at his peril. Any other construction of the act would destroy it for all practical purposes; it might as well be repealed.

The second assignment alleges the court erred in refusing the following point, viz.:

" The state of Pennsylvania has no power to pass a law making a sale of liquors to a person of known intemperate habits a criminal offence, when such liquor is shipped into this state in original packages, under the provisions of the constitution and laws of the United States with reference to commerce between the states, until such liquor, so brought in, in such original packages, has become, by breaking bulk or sale, a part of the common property of the state. And any such law, now on our statute books, has no application to this case."

This point is based upon the case of Leisy v. Hardin, 135 U. S. 100, recently decided by the Supreme Court of the United States. It is proper to say that no such question can arise hereafter, as the act of Congress passed last summer, commonly called the Wilson bill, has very properly left the control of the sale of liquor within the states to the laws of the respective states; in other words, it has subjected it to the police power of the states. As this case arose prior to the passage of the Wilson bill, it must be ruled under the authority of Leisy v. Hardin. The fact that the question cannot arise hereafter is a sufficient reason for not elaborating the point **now**. It is sufficient to refer to it briefly.

It must be considered, under the authority referred to, that the state cannot, by a general law, prohibit the importation from another state of an article of commerce, and its sale in the original package. This is the general rule; but it by no means follows that a state cannot in any manner, or for any purpose, regulate the sale of such packages. It may do so in some instances, and for particular purposes. Thus, the law of Pennsylvania prohibits and makes it a criminal offence to sell liquor to minors, to persons of known intemperate habits, and to sell it on Sunday. There is no interference here with the general power to import and sell liquor; it merely prohibits the sale to two classes of persons. I presume no one would assert that the prohibition of the sale of liquor on the Sabbath is a violation of inter-state commerce law; and, to hold that under it liquor may be sold to children and persons of known intemperate habits, is a proposition so shocking to the common sense and common judgment of mankind that I feel sure no

court will ever so decide, much less that august tribunal, the Supreme Court of the United States. While this case does not involve sales to minors, the principle involved is precisely the same, and, as that question comes up in other cases, we prefer to dispose of the whole question in one opinion. In the one case, minors, the sale is to persons who are not sui juris; in the other, persons of known intemperate habits, they are practically not sui juris, for the reason that indulgence in the use of liquor has so far destroyed their will power as to make them unable to resist temptation. In both instances, they are the wards of the law, and under its protection. The prohibition of sales to these classes only incidentally comes in conflict with the freedom of inter-state commerce. As I understand the opinion of Chief Justice FULLER in Leisy v. Hardin, it expressly excepts from the operation of that decision laws for the protection of the health and safety of the community, and it would be belittling that court, and its opinion, to hold that it was intended to permit the sale of whiskey to children and drunkards. Indeed, the statement of facts in that case negatives the violation of any such state law as this, where it is said " that none of such sales, or offers to sell, were made to minors, or persons in the habit of becoming intoxicated."

It is to be observed that no question was raised as to sales to persons, other than Chivers, being in original packages. Whether a box or a barrel of beer or whiskey in pint bottles can be separated and sold in single bottles as original packages, will be formally decided when the question squarely arises. The jury evidently regarded it as a trick, and an evasion of our statute.

We find no error in the action of the court below in sentencing the defendants to imprisonment in the Allegheny county workhouse. See third assignment. It appears to have the sanction of an act of assembly.

The fourth assignment is not sustained. The fact that defendant Porter was the agent of an importer was a matter of defence, and the burden was upon him to establish it by competent evidence, to such an extent as to throw a reasonable doubt upon the commonwealth's case. This is substantially what the court below said to the jury.

In the fifth and last assignment, the defendant Zelt com-

Statement of Facts.

plains that he was not sentenced under that provision of the Brooks law which provides a different punishment for violators of the license law, by those persons having a license, from those who sell without license. Zelt claimed to have a brewer's license. It does not appear in the paper-book, and all we know is his statement that he had such license. But he also states that he did not sell any beer of his own make; he was only the salesman for Porter, and the liquor which he sold was all sold for his employer; in other words, he was not acting under a license, but was selling for Porter, and was only protected where he would have been. We think the case comes within the ruling in Commonwealth v. Holstine, supra.

> Judgment affirmed in each case; and it is ordered that the defendants surrender themselves forthwith to the custody of the high sheriff of Washington county, for confinement according to the sentence of the court below.

