CASE 23.—PROSECUTION     BY     THE     COMMONWEALTH
AGAINST THE ADAMS EXPRESS COMPANY FOR
A VIOLATION OF THE PROHIBITION LAW.—April
27, 1906.

# Adams Express Company v. Commonwealth No. 1835

Appeal from Knox Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals.     Affirm.ed.

1.  Commerce—Interstate Traffic—Sale of Intoxicating Liquors.—
    Where a liquor dealer outside the State ships whisky C. O. D.
    into the State consigned to one who has not ordered it,
    and then notifies him thereof, whereupon he pays for and
    receives it, the transaction is not interstate commerce.
2.  Intoxicating Liquors—Violation of Prohibition Law—Express
    Companies.—Where a liquor dealer outside the State ships
    whiskey by an express company, C. O. D. consigned to one
    who has not ordered it, and then notifies him thereof, where-
    upon he pays the company therefor, and receives it, the com-
    pany is guilty of violating the prohibition law, even if it
    believes the acts of the consignor are legitimate acts of
    interstate commerce.
3.  Same—Evidence.—Evidence on a prosecution of an express
    company for violation of the prohibition law held sufficient
    to show that it knew the nature of the transaction.

LAWRENCE MAXWELL, JR., JOSEPH S. GRAYDON, W. L.
BROWN and C. W. METCALF for appellant.

### STATEMENT OF POINTS AND AUTHORITIES.

1.  The appellant did not know that the liquor had not been
ordered.   The shipments were therefore legitimate transactions
of interstate commerce so far as it was concerned.   (Ellington v.
State, 86 S. W. Rep., 330—Tex. Crim.)

Adams Express Company v. Commonwealth No. 1835.

2.  Being interstate shipments they were not subject to the law of Kentucky, and, as applied to them, section 2557b, subsection 4, Kentucky Statutes, is void. (American Express Company v. Iowa, 196 U. S., 133, 144; Adams Express Company v. Iowa, 196 U. S., 146; Rhodes v Iowa, 170 U. S., 412, 420.)

3.  Appellant had no right to ask the shipper if the liquor had been ordered. (Crouch v. L. & N. W. Ry. Co., 14 C. B., 255, 291; the Nitro-glycerine case, 15 Wall., 524, 535; Hutchinson on Carriers, section 439.)

ADDITIONAL POINTS AND AUTHORITIES FOR APPELLANT.

1.  The statute is clearly unconstitutional because it forbids all C. O. D. shipments of liquor, whether ordered by the consignee or not.  The courts cannot make a new law or confine the opera· tion of this law to cases within the constitutional power of the legislature, but must determine whether the statute as passed is valid.  (United States v. Reese, 92 U. S., 214, 221; Trade Mark Cases, 100 U. S., 82, 98; James v. Bowman, 190 U. S., 127, 142; Wynehamer v. People, 13 N. Y., 378.)

2.  Transportation for others as an independent business is commerce.  (Hanley v. Kansas City Southern Railway, 187 U. S., 617, 619.; Lottery Case, 188 U. S., 321, 352.)

3.  Whisky is an article of commerce.  (Leisy v. Hardin, 135 U. S., 100, 110.)

4.  As applied to the business of an interstate carrier the statute is a regulation thereof repugnant to the Constitution of the United States.  (American Express Company v. Iowa, 196 U. S., 133; Adams Express Company v. Iowa, 196 U. S., 147; Rhodes v. Iowa, 170 U. .S., 412; Bowman v. Chicago & North-western Railway Company, 125 U. S., 465; Central of Georgia Railway Company v. Murphey, 196 U. S., 194; Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U. S., 557.)

5.  The principles of the common law are operative upon all interstate commerce transactions except so far as they are modified by congressional enactment.  (Western Union Telegraph Company v. Call Publishing Company, 181 U. S., 92, 102; Hall v. DeCuir, 95 U. S., 485, 490; Brennan v. Titusville, 153 U. S., 289, 302; Central of Georgia Railway Co. v. Murphey, 196 U. S., 194.)

6.  If the statute is limited to cases in which the carrier knows that the liquor has not been ordered by the consignee, the con· viction must nevertheless be reversed because there was no averment of that fact and no proof of guilty knowledge on the part of the defendant. (Ellington v. State, 86 S. W., 330; Vowells v. Commonwealth, 83 Ky., 193, 195; Abbott v. Commonwealth, 20

Adams Express Company v. Commonwealth No. 1835.

Ky. Law Rep., 727; 47 S. W., 576; Tantum v. Commonwealth, 22 Ky. Law Rep., 927; 59 S. W., 32; Brown v. Commonwealth, 24 Ky. Law Rep., 727; 69 S. W., 1098.)

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee.

## POINTS AND AUTHORITIES.

1. Presumptions of Law.—Every one is presumed to know the law; ignorance of the law excuses no one. The appellant is presumed to know that on the arrival of these packages at their final destination, they ceased, under the operation of the Wilson Act, to be protected as articles of interstate commerce; and that they were thereafter under the jurisdiction of the laws of this State and subject to its police regulation, and it matters not whether the same were ordered or not ordered. As soon as said packages arrived they became subject to the opera- tion of the local option laws, and the delivery thereafter, and the acceptance of the C. O. D. charges by said company was a viola- tion of said laws. (Taylor on Evidence, 6th edition, page 84; Best on Evidence, 1st Am. edition, section 306; Wharton on Evidence, 3d edition, sections 1226, &c.)

2. State Laws become Operative on the Arrival of said Packages.—A common carrier engaged in carrying such packages, as those in question in this case, from one State into another, cannot, after said packages have arrived at their final destination, stay or prevent such packages becoming a part of the property of the State and subject to the jurisdiction of its law. After such arrival the relation of the carrier to such packages is that of a warehouseman. (Schouler's Bailments and Carriers, 3d edition, sections 390, 500, 510 and 516; Wald & Co. v. L., E. & St. L. R. R. Co., 92 Ky., 645; Weed v. Barney, 45 N. Y., 344 (6 Am. Rep., 96); Gilson v. American Mer. Union Express Co., 1 Hun., 389; Marshall v. American Express Co., 7 Wis. (73 Am. Dec., 381); Pacific Express Co. v. Wallace, 60 Ark., 381.-

3. Burden of Proof.—When the Commonwealth had shown the delivery of the packages and the acceptance of the C. O. D. charges thereon, and that the local option law was then in force and effect in said county and city, it had made a prima facie case; and the burden of proof was then on the appellant to show that the delivery of said packages and the acceptance of the C. O. D. charges by the carrier, were a part of an interstate shipment- of merchandise, and therefore exempt from the juris- diction and operation of the police regulations of the Common- wealth. (State v. Robinson, 49 Me., 287; Commonwealth v. Zelt, 138 Pa. St., 628; State v. Miller, 53 Iowa, 87; Rice on Evidence,

section 260, page 425; Orme v. Commonwealth, 21 Ky. Law Rep., 1412.)

4. Judgments.—These causes having been submitted to the trial court without the intervention of a jury, the judgments, herein are, under the practice of this State, the verdicts of properly instructed juries. (Ellison v. Commonwealth, 6 Ky. Law Rep., 306; City of Mt Sterling v. Holly, 22 Ky. Law Rep., 358; Civil Code, section 332.)

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellant was indicted by the grand jury of Knox county, Ky., for a violation of the prohibition law prevailing therein. The indictment contains much surplusage with reference to what is called the "C. O. D. Statute," and as to the manner in which the Adams Express Company received the whisky said to have been sold by it in contravention of law. Stripped of all unnecessary verbiage, the indictment contains a statement sufficient to charge the defendant company with a sale of liquor by retail, in violation of the prohibition statute applicable to Knox county; and as to the unnecessary allegations, they may be dismissed from view under the shelter of the maxim "utile, per inutile non vitiatur." The defendant company pleaded not guilty, and the case was submitted to the court on the law and facts—the intervention of a jury being waived—resulting in an adverse judgment against it.

The evidence showed, for the commonwealth, the delivery by the defendant's agent, J. A. Owens, to one J. D. Main, of a gallon of whisky, for which he paid $3.85, which the agent at once transmitted to the shipper of the whisky in Cincinnati; also that Main did not order the whisky, and did not know the name of the consignor, but it was shipped to him at Barbourville, Knox county, Ky., from Cincinnati, by

the Adams Express Company, C. O. D. This is but a small part of a general system prevailing by which unscrupulous dealers in whisky undertake through the facile aid of express companies, to evade the prohibition laws in effect in certain counties in the State, and retail liquor therein in violation of the laws forbidding such traffic. By this system the names of the men accustomed to drink whisky are obtained by the dealers, and then, without any order therefor, or any contract whatever, the whisky in gallon packages is sent to various small towns throughout the prohibition counties addressed to the parties whose names are thus acquired. The express company does not notify the involuntary consignee, but simply holds the whisky in its warerooms, and the party in whose name the liquor had been expressed receives notice, either by postal from the consignor, or by some local agent of his in the county, that there is an express package for him and then, whenever the thirst for liquor becomes sufficiently strong to tempt him to pay the express charges and take it out of the express office, this is done. The name of the consignor is not known by the involuntary consignee, and the address for the return of the money is the number of a lock box in the Cincinnati post-office. After the involuntary consignee becomes sufficiently acquainted with the system existing between the consignor and the express company, he finds that a gallon of liquor is generally kept at the express office subject to his order and the payment of charges, and he goes there for it with the same confidence that he would go to an ordinary dealer. The evidence in this case shows that, within six months next before the trial, J. D. Main had taken from the Adams Express Company's office at Barbourville, Ky., as many as 20 separate packages of

whisky, of a gallon each, and the testimony of the express agent shows that he often had as many as 50 gallons of whisky on hand at one time consigned to various parties under the same system. Frequently, several parties club in and take out whisky together, dividing it in proportion to the amounts paid in by each; it being a rigid rule of the defendant company never to deliver the whisky to any person other than the named consignee. It was stipulated between the commonwealth and the defendant that the whisky in question was shipped from Cincinnati in the ordinary course of the express business.

The first and crucial question in this case is whether or not the shipment and delivery of the whisky was an act of interstate commerce. If so, it may be conceded that the defendant should go acquit; if not, it is practically conceded that the acts of the defendant constituted a sale of liquor in Knox county in violation of the prohibition law. We do not think the amendment of the prohibition law commonly denominated the "Farris," or "C. O. D." law has any bearing upon the merits of the offense under discussion. The learned counsel for appellant hinge the whole defense on the fact that the act of the express company constituted the carrying on of inter-state commerce, and the C. O. D. law, being an attempt to regulate inter-state commerce, which admittedly is under the exclusive regulation of the Congress of the United States, is for that reason void. This may be conceded. However, if the C. O. D. amendment was stricken from the statute book entirely, it would not affect in any way the merits of the transaction under investigation as we see it. The prohibition statute, without the amendment, forbids, under penalty, the sale of liquor by retail in Knox county; but neither the statute itself, nor the amendment thereto, under-

takes to regulate inter-state commerce. No State statute can affect inter-state commerce, and the Legislature did not attempt to do so by that in question.

We do not agree to the proposition that the transaction which took place between the express company and J. D. Main in Knox county was interstate commerce. Nor do we agree with the Attorney General in his view of the effect of the Wilson bill upon the transaction in hand. As we understand him, he insists that, although the shipment from Cincinnati be conceded to have been a legitimate act of interstate commerce in its original inception, yet after the goods arrived in Barbourville, if kept overtime in a wareroom, then the transaction ceases to be one of interstate commerce, and becomes one of local commerce. We do not understand the Wilson bill, as construed by the Supreme Court of the United States, to have this effect upon a shipment of the kind under discussion. Without naming the decisions, or discussing them with minute particularity, we understand the Supreme Court to have decided, in the various cases cited in the briefs of counsel, that, where the whisky is purchased in a foreign State, it may be shipped by the seller to the buyer into a State where the sale of liquor is prohibited by law; that it is interstate commerce, unaffected by the local law, until it is delivered to the consignee, and the mere lapse of time, or the particular place where the goods are kept until called for, have no effect to change the quality of the transaction so that it ceases to be interstate commerce before the delivery. If this were not true, then if the consignee happened to be absent from home, or refuse to call for his goods promptly, that which was a legitimate transaction in its original inception would become vicious and illegal by the mere lapse of time occasioned by the negligence of the

consignee. If the transaction be interstate commerce originally, it continues so until the goods are delivered into the hands of the consignee.

But was this transaction interstate commerce? No contract of purchase is even pretended to have been made in Cincinnati. So far as the consignor is concerned, he simply shipped his illegitimate goods into the State of Kentucky to a point where the prohibition law prevails, and through the instrumentality of the express company there made a sale to J. D. Main. No one disputes, or can dispute, that the transaction, so far as the consignor was concerned, was illegitimate and in violation of the law. He shipped forbidden goods into a prohibition district of Kentucky for the chance of being able to sell it after it reached its destination to Main. So far as he is concerned, the transaction in substance is the same as if he had brought the whisky himself to Barbourville and there sold it to Main. This being true, the transaction was not interstate commerce. The commonwealth proved facts which, of themselves, established the guilt of the defendant company. It showed the existence of the prohibition law in Knox county, the delivery of liquor by the defendant to Main, and the payment of the price by the latter to the company's agent. These facts constituted an offense under the prohibition laws prevailing at the place of sale, and the defendant is guilty unless it has a defense which takes the transaction from without the operation of the State statute. It seeks to do this by alleging that the transaction was interstate commerce. The burden to establish this fact is upon the defendant. There can be no doubt of the soundness of this proposition. When the commonwealth has established facts which show the guilt of the accused, if the defendant seeks to avoid the legal effect of this evidence, it must do

it to the satisfaction of the court or jury, or else be condemned. Did the defendant show that the transaction out of which grew the offense with which it stood charged was interstate commerce ! The answer to this must be in the negative. It simply showed that it received in Cincinnati, in the usual course of business, which means no more, as we understand it, than that the goods were shipped in the ordinary way, whisky consigned to J. D. Main in Barbourville, Ky.; but this does not constitute interstate commerce. Unless there was a bona fide shipment to a real consignee in Barbourville, the transaction was not interstate commerce, but a mere simulacrum of interstate commerce. In this case there was no bona fide shipment of merchandise from Cincinnati to Barbourville, but there was an illegal sending of whisky into Knox county through the instrumentality of the express company for the purpose of finding a buyer there. In its very substance, the unknown consignor, whose headquarters is a lock box in the Cincinnati post-office, simply appointed the Adams Express Company as his agent to find for him a purchaser in Knox county for a gallon of whisky on a given commission. The defendant cannot say it did not know the transaction was an illegitimate one, or that it believed it was a bona fide shipment. It must show in defense of its otherwise illegal act in Knox county, that the State law did not apply to it at that time, because what it did was an act of interstate commerce. Now, interstate commerce cannot be based upon fraud or chicanery. It must necessarily be a legitimate transaction. The Constitution and statutes of the United States are not shields for criminals; nor do they furnish a means by which crime may be effectuated. The Supreme Court of the United States does not uphold criminal acts, or pro-

tect criminals from the consequence of their misdo-
ings.   The transaction which took place between
Cincinnati and Barbourville bears the same resem-
blance to interstate commerce as the wares of the
green goods man bears to the genuine money of the
United States.  Both are mere counterfeits.  As said
before, in order to escape conviction, the burden was
upon the defendant to show that its acts were in
pursuance of a contract of interstate commerce.

In the case of State v. Robinson, 49 Me., 285, four
baskets of champagne were seized under the laws
of the State, and the question arose whether or not
they, being in the original packages, were subject to
seizure, and the question of interstate commerce was
involved.   It was said: "It is not pretended, in the
case at bar, that the wine was imported by Robinson.
If he claimed the right to sell it on that ground, the
burden of proof was on him to show that he was the
importer.   No evidence on that point was offered.
The instructions given to the jury, that he had shown
no right to sell, were correct, and the exceptions must
be overruled."  The case of Commonwealth v. Zelt.
138 Pa. 615, 21 Atl. 7, 11 L. R. A. 602, in principle
involved the same question as the Maine case above
cited.   The court, on the question in hand, said:
"The fourth assignment is not sustained.   The fact
that defendant Porter was the agent of an importer
was a matter of defense, and the burden was upon
him to establish it by competent evidence, to such
an extent as to throw a reasonable doubt upon the
commonwealth's case.   This is substantially what the
court below said to the jury."

Suppose, instead of the defense being interstate
commerce, it had been license, and the appellant had
undertaken to defend the sale in question by showing
that it was the agent of the seller, and that the latter

was duly licensed to carry on the business; would it be sufficient to show that it believed its principal was licensed, and would the court·hear· such evidence? On ·the contrary, in order to defend, would it not·be imperative upon it to show, not that it honestly believed it was, but that it was, the agent of a licensed dealer? In the case at bar, the defendant undertakes to show that it was the agent of the consignor, and that it believed the consignor's acts were legitimate acts of interstate commerce. Is this a better excuse than the one supposed? We think not. Appellant cannot shelter itself under its common-law duty as a common carrier of goods. There is no common-law duty devolving upon a common carrier to act as the collecting agent of the consignor. That is a matter of private contract, and one which the carrier may enter into, or refuse, at its option. When it does make such a contract, it stands with reference to it just as any other agent. In Am. & Eng. Encyc. of Law, volume 12, page 553, on this subject, it is said: "There is no common-law duty devolving upon an express company to act as the collecting agent of the shipper. Such obligation arises only by contract, express or implied." Cox, Hill & Thompson v. Columbus & Western Railway Co., 91 Ala. 392, 8 South. 824; James McNichol v. Pacific Express Co., 12 Mo. App. 401.

But, passing this, while there is no direct evidence upon which one could lay his finger and say this showed knowledge, or that showed knowledge, on the part of the express company, that the business in which it was engaged was a criminal one, we think, taking the evidence as a whole, and looking at the circumstances from the point of view in Barbourville, there was enough to show that the defendant was bound to know that the consignors were carrying on,

systematically, a criminal business, and that the names given as consignees to the various packages of whisky shipped were fictitious. In other words, while there were real persons in Barbourville bearing the names used, these persons had no contract of purchase, but the whisky was shipped in their names with a view of tempting them to purchase it after its arrival in Barbourville. Let it be remembered that Barbourville is a small town, scarcely above the dignity of a village, although it is the county seat of Knox county. It is a matter of common knowledge that in a small town there are no secrets. Every man knows every other man, what he does, how he conducts himself, and what are his habits. The system under consideration had been carried on a long time. Owens, the express agent, states that he had been at Barbourville 14 years; that during that time shipments of whisky had been received in the same way continuously. He admits that in no case did he ever notify any named consignee that there was a package for him. This tends to show that he expected the party to be notified in other ways. Large numbers of similar packages were held by him constantly. He rigorously enforced the rule not to deliver a package to any one except the consignee. This showed him to be a formalist, and that he know the advantage of surrounding the transaction with every semblance of legality. To borrow one of Edmund Burke's fine phrases, the transaction was made "most iniquitously legal." We do not believe it possible for an illegitimate business to be carried on through the express company on so large a scale, for so long a time, and especially where remittances were to be made to a lock box, instead of to a named firm, without its being ascertained that the system was criminal. Viewing the whole case, together with the large

number of similar cases against the same defendant
involving the same facts, and which were all heard
together, we are forced to the conclusion that the
agents of the defendant corporation at Barbourville
knew of the illegality of the system they were helping
to conduct, and that the corporation itself was the
accomplice for pay of the criminal consignors.

The question involved here is a most important one
for the people among whom the offense was com-
mitted. The mountain counties of Kentucky are
thinly populated, and the arm of the law is necessarily
weak, and the passions of men correspondingly
strong. We do not transcend the bounds of judicial
conservatism in saying that a very large number of
the cases involving violent crimes which come to this
court, on appeal from that section of the State, are
directly caused by the use of whisky. Largely
influenced by this consideration, no doubt, the good
people of a majority of the mountain counties have
sought to control crime by the enactment of prohibi-
tion laws, and the welfare of the whole community is
bound up in the enforcement of these laws. It goes
without saying, however, that if, by the instrumental-
ity of such transactions as we have under discussion,
whisky can be introduced and sold by retail through
the aid of the express company, which makes itself
the agent to deliver the spirits and collect the pay
therefor, the law is reduced to a nullity. We do not
believe that an express company can legitimately
thus thrust the shadow of its greed between the
people and their uplift.

The judgment is affirmed.