## Commonwealth v. Miller.

*Constitutional law — Hunting—Killing man by mistake—Act of May 20, 1921.*

The Act of May 20, 1921, P. L. 968, providing that it shall be unlawful for any person to shoot at or wound or kill a human being in mistake for either game or a wild creature of any description, and imposing penalties, does not violate the Constitution of the State of Pennsylvania or the Constitution of the United States.

Motion to quash indictment. Q. S. Dauphin Co., Jan. Sess., 1926, No. 108.

*Robert T. Fox,* District Attorney, for plaintiff.

*Michael E. Stroup,* for defendant.

Fox, J., April 5, 1926.—This matter comes before us upon a motion to quash the indictment.

The reasons assigned to sustain this motion are as follows:

1. The indictment failed to set forth an indictable offence.

2. The Act of May 20, 1921, P. L. 968, providing "that it shall be unlawful for any person to shoot at or wound or kill a human being in mistake for either game or a wild creature of any description," is unconstitutional, because it offends against article I, section 9, of the Constitution of this Commonwealth, in that it is an attempt to deprive the defendant of his liberty without due process of law.

3. That the Act of Assembly of May 20, 1921, P. L. 968, is unconstitutional and void, because it deprives and takes away from the defendant the defence guaranteed him by article I, section 9, of the Constitution of Pennsylvania, and is in conflict therewith.

4. The Act of May 20, 1921, P. L. 968, under which this bill of indictment is drawn, is unconstitutional and void, in that it is an attempt to deprive the defendant of his liberty and property without due process of law and is in conflict with and violates article V of the Constitution of the United States.

At the oral argument, counsel for defendant also contended that the act of assembly in question offends against article XIV of the Amendments to the Constitution of the United States.

The Act of May 20, 1921, § 4, P. L. 968, the act under which the bill of indictment was drawn, *inter alia,* provides: "Every person who shall shoot at a human being in mistake for game or in mistake for any wild creature and shall, through such shooting, kill a human being, shall be considered guilty of a misdemeanor, and upon conviction of such offence, shall be sentenced to pay a penalty. . . ."

Article I, section 9, of the Constitution of Pennsylvania, provides, *inter alia:* "Nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

The 5th Amendment to the Constitution of the United States provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall. . . ."

The 14th Amendment to the Constitution of the United States provides: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the

privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The proposition of law suggested by the defendant, and which we are asked to affirm, is, that the indictment in this case does not set forth an indictable offence, in that the act of assembly upon which the indictment is founded attempts to create a criminal offence by making a person guilty of a misdemeanor who by mistake and without intent does injury to another, thereby depriving him of his liberty without due process of law, which is violative of the Constitutions of the United States and Pennsylvania.

The question has been raised in many instances and the subject has received fair consideration and many times been passed upon. See 8 Cyc., 1080, and note; 16 Corpus Juris, 76, 77 and 78.

Due process of law has been defined to be: "Due process of law ordinarily includes a complainant, a defendant and a judge, regular allegations, opportunity to answer, and a trial according to some settled course of proceeding:" Huber v. Reily, 53 Pa. 112. " 'Law of the land' means due process of law; it does not mean merely an act of the legislature:" Norman v. Heist, 5 W. & S. 171. "It means the law of the individual case as established in a fair and open trial or an opportunity given for one in court and by due course and process of law:" Brown v. Hummel, 6 Pa. 86.

The act under which this defendant is indicted does not impose any higher penalty than other criminal acts of the same tenor; nor does it deprive the defendant of a regular course of administration in a court of justice. The bill of indictment was submitted to a grand jury, which found a true bill, and the defendant was then called for trial before a court of justice, consisting of a judge and jury, as all other persons are who are indicted under an act of assembly making an offence against its laws a misdemeanor. We think the defendant is brought squarely within the rules as laid down by the United States Supreme Court in the case of Ex parte Converse, 137 U. S. 624, which is as follows: "But when a person accused of crime within a state is subjected, like all other persons in the state, to the law in its regular course of administration in courts of justice, the judgment so arrived at cannot be held to be such an unrestrained and arbitrary exercise of power as to be unconstitutional; and if so convicted, he cannot be released on *habeas corpus* under the 14th Amendment."

In the case of Maxwell v. Dow, 176 U. S. 581, it is said: "The 14th Amendment was not designed to, and does not, interfere with the general power of the state to protect the lives, liberty and property of its citizens, nor with the exercise of that power in the adjudications of the courts of the state in administering the process provided by its laws."

In the case of Leeper v. Texas, 139 U. S. 462, 631, the court said: "That by the 14th Amendment the powers of states in dealing with crime within their borders are not limited, except that no state can deprive particular persons, or classes of persons, of equal and impartial justice under the law; that law in its regular course of administration through courts of justice is due process, and when secured by the law of the state, the constitutional requirement is satisfied; and that due process is so secured by laws operating on all alike and not subjecting the individual to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice. Hurtado v. California, 110 U. S. 516, 535, and cases cited."

After the passage of the 14th Amendment the Supreme Court first applied the protection of due process of law to matters of procedure: Bank *v.* Okely, 4 Wheat. 235 (U. S., 1819); Murray *v.* Hoboken L. & I. Co., 18 How. 272 (U. S., 1855); Davidson *v.* New Orleans, 96 U. S. 97; Lawton *v.* Steele, 152 U. S. 133. But of recent years that court has extended the doctrine to substantive law making reasonableness the test. It has thus applied it to legislation relating to police power: Munn *v.* Illinois, 94 U. S. 113 (1876); Burns Baking Co. *v.* Bryan, 264 U. S. 504 (1924); Pierce *v.* Society, 45 Sup. Ct. 571 (1925); to the power of taxation: Fallbrook Irrigation District *v.* Bradley, 164 U. S. 112; to the power of eminent domain: Rindge Co. *v.* Los Angeles Co., 262 U. S. 700. It now decides whether or not legislative acts are due process of law, both as to legal procedure and substantive law. A learned and instructive treatise upon the subject, "Due Process of Law under the United States Constitution," by Hugh Evander Willis, of the Indiana Law School, is found in the University of Pennsylvania Law Review and American Law Register, Vol. 74, No. 4, page 331, February, 1926.

We are not pointed to any case, nor have we found any, similar to the one at bar, in which it is said that such legislation as we are now considering is unreasonable and, therefore, violative of the due process of law prohibition.

The purpose of the act of assembly under consideration is to protect the lives of human beings by having those using firearms, when hunting wild game in this State, exercise great care and caution. It compels the hunter before shooting to be certain that the object at which the firearm is aimed is not a human being. Such duty is without difficulty. It is intended to prevent carelessness and recklessness. There is nothing unreasonable in this. It is better that hunters lose game than that human beings lose lives.

The statute in question was passed in aid of the police powers of the State; the doing of the act complained of was forbidden and could be so done without regard to the intent or knowledge of the defendant. In 16 Corpus Juris, 76, it is said: "As a general rule, where an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law, and the existence of a criminal intent is to be regarded as essential, even when not in terms required. The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the State, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt." The rule has been applied to a number of subjects, and in our own state to violations of the law relating to liquor: Com. *v.* Zelt, 138 Pa. 615, and the cases there cited. Also to Oleomargarine, Com. *v.* Weiss, 139 Pa. 247. In the State of Iowa it was held to be applicable to statutory rape: State *v.* Sherman, 77 N. W. Repr. 461.

The protection of the lives of its citizens is within the police powers of the State, and the latter has for such purposes inherent power to pass a statute such as the one in question, giving the defendant and all others in his class a fair trial in a court of justice according to the mode of proceeding applicable to such a case.

Commonwealth v. Miller.

Wherefore, we are of the opinion that the act of assembly under which this bill of indictment was drawn is constitutional.

And now, April 5, 1926, upon due consideration, the motion to quash is hereby overruled.

From George R. Barnett, Harrisburg, Pa.