## Benson License

*Harry P. Creveling*, for appellant.

*A. T. Gillespie, Jr.*, for Commonwealth.

WIEAND, J., July 28, 1964.—This is an appeal from an order of the Pennsylvania Liquor Control Board suspending for 15 days Hotel Liquor License no. TH-2996 issued to Willie Benson, trading as Freddie's Bar. The suspension was based on the board's finding that "the licensee, his servants, agents or employees permitted known prostitutes and/or persons of ill repute to frequent the licensed premises on September 19, 21, 1962."

After the appeal had been filed, counsel for the licensee and counsel for the board stipulated that the appeal should be decided by this court on the basis of testimony taken before the board, from which, however, the court was to make its own findings of fact. Those facts are as follows:

On the evening of September 19, 1962, two enforcement officers of the Liquor Control Board separately entered the licensed premises at 433-35 Lehigh Street, Allentown, Pa., and found the same to be patronized by approximately 20 persons, 5 of whom were females. Before the evening was over, each of the officers had effected an assignation with a different female patron, had given her marked money in exchange for her agreement to participate with him in an act of sexual intercourse, had left the premises with his harlot for that purpose, and had caused her to be arrested on a charge of prostitution by police who were waiting outside the premises. Each of the two women subsequently pleaded guilty to such charge and was sentenced by this court.

There is no evidence that the arrested women were known, on the night of the foregoing events, to be prostitutes by the licensee or his bartender then on duty. The record is void of any reputation evidence to establish that these women were persons of ill repute, and there is no testimony tending to prove that they

were generally known in the community or in the neighborhood as prostitutes. The testimony of the enforcement officers reveals affirmatively that the bartender on that evening could not have heard the conversations by which the various propositions were made. After the women had been arrested, and only then was it determined by the Allentown Police Department that one of the accused women had previously been convicted of prostitution in Toledo, Ohio, and for disorderly conduct in Philadelphia, Pa. The other woman had no prior criminal record.

A third woman, previously convicted in Lehigh County of prostitution and maintaining a disorderly house, was seen entering the bar by a city detective during his participation in the stake-out of the premises, but whether she was permitted to remain or did, in fact, remain is not revealed by the evidence. Counsel for the board readily concedes that the board failed to prove that she frequented the premises on any of the dates in question.

On September 21, 1962, one of the enforcement officers of the board, together with local police, returned to the licensed premises, inspected the same, and learned that the two accused prostitutes were registered as guests of the hotel. There is no evidence, however, that either woman was present on the licensed premises on that day or at any time thereafter. The licensee testified that upon learning of their arrest, he compelled both women to vacate their rooms immediately upon expiration of the period for which they had paid rent.

The Liquor Code, in section 493 (14), 47 PS § 4-493 (14), makes it unlawful for any licensee, his servants, agents or employes "to permit persons of ill repute, known criminals, prostitutes or minors to frequent his licensed premises." Counsel for the licensee would have us interpret this section to require actual knowledge to the licensee and urges us to hold, therefore, that there

can be no suspension unless the licensee or his employe permitted the frequenting of his premises by persons known to him to be prostitutes. Counsel for the board argues, on the other hand, that the word "known" modifies only the noun "criminals" and has no reference whatsoever to the term "prostitutes." He contends, therefore, that even though the board found as a fact that the premises were frequented by "known prostitutes," the suspension should be upheld if this court finds that the premises were frequented by women who were, in fact, prostitutes.

Our appellate courts have frequently said that whether or not guilty knowledge is a necessary ingredient of a statutory offense is a matter of construction to be determined from the language of the statute and in view of the manifest purpose and design of the same: Commonwealth v. Weiss, 139 Pa. 247, 251; Commonwealth v. Koczwara, 397 Pa. 575, 582; Commonwealth v. Gorodetsky, 178 Pa. Superior Ct. 467, 476. See also Commonwealth v. Jackson, 146 Pa. Superior Ct. 328, affirmed per curiam in 345 Pa. 456. It is for the legislature to determine whether the public injury threatened in any particular matter is such and so great as to justify an absolute and indiscriminate prohibition.

It is significant that the legislature, in writing this subsection of the Liquor Code, did not make it unlawful knowingly to permit criminals, prostitutes or minors to frequent the premises. It adopted, rather, the adjective, "known," and positioned it in the structure of the sentence so as to cause it to modify one or more of the succeeding nouns, i.e., "criminals, prostitutes or minors." The language of the statute itself, therefore, negates clearly the interpretation suggested by the licensee.

Nor is this question an open one. The Supreme Court of Pennsylvania, in Commonwealth v. Koczwara, supra, at page 583, has said that it is not a prerequisite to the

imposition of penalties otherwise provided in the statute that the acts prohibited by Section 493 (14) be committed "knowingly, wilfully or intentionally." The court noted the absence of any language requiring a contrary interpretation and concluded, on page 584, ". . . that the intent of the legislature in enacting this Code was not only to eliminate the common law requirement of a mens rea, but also to place a very high degree of responsibility upon the holder of a liquor license to make certain that neither he nor anyone in his employ commit any of the prohibited acts upon the licensed premises. Such a burden of care is imposed upon the licensee in order to protect the public from the potentially noxious effects of an inherently dangerous business."

We cannot accept, however, the construction proposed by the board, which would limit the effect of the adjective "known" to criminals and eliminate all application and meaning thereof with respect to prostitutes. To do so is to ignore the presumption established by section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552 (1), that the legislature does not intend a result that is absurd or unreasonable. We do not believe that the legislature intended to impose upon a licensee the impossible burden of determining at his peril whether each woman coming upon his premises has or has not at any time committed one or more acts of prostitution.

It has been said that the words "known criminal" suggest that one's criminality has been so notorious and of such a serious nature that he is readily identifiable in the public mind as a persistent law violator: Appeal of Cardamone, 63 Lack. Jur. 49. It may be asked, therefore, why a known prostitute should not by the same reasoning be determined to be a female whose offering or using of her body for sexual inter-

course for hire has become so notorious and of such a promiscuous nature that she has become readily identifiable in the community as a prostitute.

In Commonwealth v. Zelt, 138 Pa. 615, the Supreme Court wrestled with the interpretation to be placed upon "persons of known intemperate habits" as those words were employed by an earlier legislature to determine a class of persons to whom liquor should not be sold. The court there said, at page 626: "We are of opinion that selling liquor to persons of known intemperate habits comes within the same rule as selling to minors, i.e., the intent is not material. The words in the statute, 'persons of known intemperate habits,' are descriptive of a class to whom the dealer sells at his peril . . . Every man has a reputation for sobriety, or for intemperance, in the community in which he resides, just as every man has a reputation for integrity, or for truth, and such reputation is generally known. None know better than saloon-keepers themselves the habits and reputation of their neighbors, as to drinking, and when a man is known as an 'intemperate man' in his neighborhood, *not known to everyone, but known generally to be such,* the person who sells him liquor must take notice of that fact at his peril."

In our opinion, a similar result was intended by the legislature when it made it unlawful to permit known criminals and prostitutes to frequent licensed premises. Actual knowledge by a licensee that female patrons are prostitutes is immaterial, but he is prohibited from permitting his premises to be frequented by women who are known generally and identifiable in the community as prostitutes. Every woman has a reputation for chastity, and none know better than saloon-keepers themselves the reputation of their neighbors in this respect. When a woman is known as a prostitute in her community, *not known to everyone, but known gen-*

*erally as such,* the person who holds a license must take notice of that fact at his peril.

No evidence was introduced on behalf of the Liquor Control Board to show that the patrons of Willie Benson on September 19, 1962 were known generally or readily identifiable in the community or in the neighborhood as prostitutes. Nor was there any reputation evidence tending to show that the patrons in question were persons of ill repute. The board's evidence was confined to particular acts of the two patrons in question. It is, however, the frequenting of premises by the class of persons described and not their acts while there, which is prohibited by the statute: Commonwealth v. Fantazzi, 35 Northamp. 85. A bad general reputation is not proved by specific acts of misconduct: Commonwealth v. Sutton, 171 Pa. Superior Ct. 105.

Nor is ill repute or known prostitution established by evidence that one of the two women in question had been previously convicted of prostitution in Toledo, Ohio and disorderly conduct in Philadelphia. These convictions were unknown to the Allentown police on the date of her arrest, and it was not until the vast resources of the Federal Bureau of Investigation were brought into use that it was learned that one of the women had a prior record.

Since the Liquor Control Board failed to prove by competent evidence that the persons frequenting the premises on September 19 and September 21, 1962, were persons of ill repute or known generally in the community as prostitutes, the suspension imposed by the Board must be set aside.

This conclusion necessarily disposes of appellant's quixotic argument that a prostitute is not a prostitute until convicted as such and makes it unnecessary to decide whether evidence of a person's presence on one occasion is sufficient to establish a frequenting of the

licensed premises within the prohibitory language of the statute.

ORDER

And now, July 28, 1964, the appeal of Willie Benson is sustained and the suspension of Hotel Liquor License TH-2996 imposed by the Pennsylvania Liquor Control Board is reversed and set aside.